## Geron, Appellant, *v.* Kennedy.

Argued January 6, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Joseph F. Dutka,* with him *Z. R. Bialkowski,* for appellant.

*Frank J. Gormley,* with him *Martin B. Gormley* and *Robert T. Martin,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 14, 1955:

On June 7, 1946, the United Mine Workers of America, as collective bargaining agents for anthracite mine workers in Districts Nos. 1, 7 and 9, entered into an agreement with anthracite operators for the establishment of a trust known as the Anthracite Health and Welfare Fund. According to the terms of the trust, "The Fund shall be used for making payments to mine workers and their dependents and survivors, with respect to (i) wage loss not otherwise compensated at all or adequately under the provisions of Federal or State law and resulting from sickness (temporary disability), permanent disability, death or retirement, and (ii) other related welfare as determined by the Fund. Subject to the stated purposes of the Fund, the Trustees shall have full authority with respect to questions of coverage and eligibility, priorities among classes of benefits, amounts of benefits, methods of providing or arranging for provisional amounts of benefits and all related matters."

Under the authority granted by the above recited provision the Trustees of the Fund declared by resolutions of July 23, 1948 and July 26, 1948, that "a pension of One Hundred Dollars ($100) per month shall be paid . . . to each eligible and qualified member of

the United Mine Workers of America, Districts 1, 7 and 9, who, on June 1, 1946, attained or thereafter attains the age of 62 years and who has served twenty years in the Anthracite Coal Industry in the State of Pennsylvania and who has retired . . . on a date subsequent to June 1, 1946."

On April 18, 1949, the trustees lowered the age requirement to 60 years and by resolution dated January 15, 1954, reduced the monthly pension to $50.

The plaintiff, Wasil Geron, who had reached the age of 68 years and had been employed as a miner for 25 years, made claim for a pension under the provisions of the Trust, but the claim was denied by the trustees because Geron's time of employment in the anthracite mines totaled only 17 years, he having been employed the rest of the time in bituminous mines. The plaintiff brought an action in equity in the Court of Common Pleas of Lackawanna County to compel the trustees to pay the claimed pension. The complaint was dismissed and this appeal followed.

It is the contention of the plaintiff that "the eligibility requirements as to age and twenty years' work service in the Coal Industry are reasonable, but any attempt to limit work service to the Anthracite Industry is discriminatory and contrary to the stated purposes of the fund." He thus claims that his years in the bituminous industry should be honored in the computation of time required for eligibility under the Trust Fund. He points out that although the agreement originally stated that "the funds shall be used for making payments to *mine workers* and their dependents and survivors," it was later amended to read "members of the United Mine Workers of America." From this, he concludes that the signatories to the agreement did not intend to limit the scope of the Fund to anthracite workers. It is clear, however, that

this amendment was formulated to limit the beneficiaries to members of the *United Mine Workers* and in no way attempted to change the qualification that the beneficiary had to be one engaged in anthracite mining.

In 1950 the Agreement was amended to read: "All the foregoing benefits shall be applicable to the individual members of the United Mine Workers of America, and their families and dependents . . ." From this, plaintiff's counsel argues that "the purpose of this Trust was to benefit members of the Union regardless of whether they worked in the Anthracite or Bituminous fields." But if the signatories had intended the benefits to be extended to miners in the bituminous fields as well as to those in the anthracite mines, it would have been a very simple matter simply to insert the word "all" before "individual members" so that the agreement would read: "All the foregoing benefits shall be applicable to *all* the individual members of the United Mine Workers of America." The signatories, however, did not do this, and we are bound by the wording of the contract itself.

Plaintiff's counsel cites the case of *Forrish v. Kennedy,* 377 Pa. 370, in support of his position, but there the claimant, contrary to the situation here, *had complied with the conditions* promulgated by the trustees. It is contended also by the plaintiff that since the agreement was signed not only by officials of Districts 1, 7 and 9, but also by the President of the International Union of the United Mine Workers of America, the agreement therefore had to embrace both the anthracite and bituminous coal fields. But it cannot seriously be maintained that the signature of a president of any organization or corporation binds all the fields of operation of that organization or corporation when the contract which he signs specifically limits

its provisions to but a segment of the organization's activities.

It is true, as plaintiff states, that the trustees must administer the Trust "subject to the stated purposes of the Fund," but one can never lose sight of the fact that the Fund is specifically denominated the *Anthracite* Health and Welfare Fund. The Trustees would have no authority whatsoever to divert the benefits of that fund from the anthracite to the bituminous fields. To argue that anthracite includes bituminous because they are both coal is to argue that the word "oxen" includes "cows" because they are both cattle.

Section 187 of Restatement, Trusts, declares: "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." The record does not reveal any abuse of discretion by the trustees in limiting benefits arising from the Anthracite Health and Welfare Fund to employees who have been employed in the Anthracite coal industry for twenty years.

The plaintiff has worked 25 years in the mines and has now reached an un-employable age. It is a tragedy that having devoted 17 years to the anthracite mines he should fall just 3 years short of reaching the goal of a pension provided by the anthracite industry. The Trustees, however, have no authority to go beyond the specific provisions of the document which brought the Fund into existence, and the Courts are equally bound by the precise word of the contract.

Decree affirmed. Costs on the appellee.