Lutisha Bruce BOYD, Plaintiff,

v.

Joseph CURRAN, John B. McDougall, David M. Ramos, Joseph A. Dunn, Woodrow P. Nayer, Robert Nesbitt, Ralph Casey, William G. Mullins, Edward J. Neary, Donald L. Hastings, J. R. Thompson, Henry K. Skeele, as Trustees of the NMU Pension and Welfare Plan, Defendants.

United States District Court
S. D. New York.
Oct. 8, 1958.

Joseph H. Sand, New York City, for plaintiff.

Burns, Currie, Maloney & Rice, New York City, Albert E. Rice, New York City, of counsel, for defendants.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff, alleging that she is the legal widow of Robert Boyd, sues the trustees of the National Maritime Union Pension and Welfare Plan (hereinafter referred to as the Plan) to recover death benefits concededly due thereunder to the proper beneficiary of the decedent. Defendant trustees now move to dismiss the complaint, pursuant to Rule 12(b) (6), F.R. C.P., 28 U.S.C.A., for failure to state a claim, or, in the alternative, for summary judgment pursuant to Rule 56(b).

The complaint alleges, and it is admitted for purposes of this motion, that the plaintiff and the decedent were legally married domiciliaries of California at all times relevant to this controversy. Decedent was a seaman employed by a shipowner contributor to the Plan. He was accidentally drowned at Casablanca, Morocco, on October 18, 1956. It does not appear who his employer was, where his employment took place, on what ship he was employed or where she sailed from.

However, what is denominated in the Plan as "life insurance" in the sum of $3,500, and "accidental death insurance" in the sum of $3,500, concededly became payable upon his death. On June 27, 1956, some four months before his death, decedent had executed a nomination of beneficiary form provided by the Plan containing the following language:

"I revoke all previous beneficiary nominations and make the following nomination with respect to all insurance provided now or at any time in the future under John Hancock's group insurance policy, still reserving to myself the privilege of other and further changes in accordance with such policy."

The form designated one Emma Louise Boyd as beneficiary and her relationship to him as "wife".

The complaint alleges, and it is not controverted on this motion, that Emma Louise Boyd was never married, or in any way related, to the decedent. The plaintiff claims that under the California Community Property Laws,[1] since she and the defendant were California domiciliaries, as his legal widow she is entitled at the least to one-half of the death benefits payable, notwithstanding his designation of Emma Boyd as his beneficiary and wife. She also claims that the entire benefits payable upon the theory that the nominated beneficiary was not married to or related to the decedent, and that the designation was brought about by "fraud, duress, misrepresentations and concealment of material facts". The latter claim is not pressed by plaintiff on this motion which concerns the community property claim only.

Defendant trustees assert that they are bound to make payment to the designated beneficiary, and that the plaintiff has no rights to any part of the benefits payable even assuming that she is the legal widow of decedent and that she

1. West's Ann.California Civil Code, § 164: "All other property acquired after marriage by either husband or wife, or both, including real property situated in this State and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this State, is community porperty."

West's Ann.California Civil Code, § 687: "*Community property.* Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either."

and the decedent were domiciled in California.

The National Maritime Union Pension and Welfare Plan was established on August 1, 1950, as a result of collective bargaining between the National Maritime Union and various steamship company employers. Contributions to the Plan are made by each employer by payment of a fixed sum per day per man employed. Under the most recent amendment each employer pays to the trustees the sum of $1 per day per man. The employees themselves made no payments to the Plan.

The Plan took the form of an agreement and declaration of trust between the National Maritime Union and the various employers who adopted the agreement. Under its terms the payments by the employers to the trustees of the National Maritime Union Pension and Welfare Fund are to be used for the payment of such employee benefits as the trustees determined. The trustees are given broad power and discretion to determine the character and amount of benefits to be paid.

In the exercise of this discretion the trustees have promulgated rules and regulations governing, among other things, eligibility, beneficiaries and their designation, life insurance, insurance for death and dismemberment by accidental means, and other benefits. Under Article II of the rules and regulations the eligible employee has "the right to designate a beneficiary or beneficiaries to receive any benefits hereunder payable by reason of his death * * *, but such designation shall not be valid unless it is in writing, on forms supplied for that purpose by the Trustees or satisfactory to" them and filed at their office. The beneficiaries so designated are known as "beneficiaries of record". There are provisions for change of beneficiary. In the event of failure to designate a beneficiary, or if the beneficiary of record does not survive the employee, the amount of any benefit shall be paid "to the executors or administrators of the employee", except that the trustees may, in their sole discretion, pay the amount of such benefits to his wife if then living or if she is not alive "to any other person who is an object of the natural bounty of the employee". Payments made in accordance with these provisions completely discharge the trustees from liability.

Upon death, except when caused by excluded risks or perils, the trustees "shall pay to the beneficiary the amount of life insurance in force hereunder", now $3,500. If death is caused by accidental means the trustees "shall pay * * * to the beneficiary, the amount of insurance specified for such loss" which is an additional $3,500.

The declaration of trust also provides that no employee "shall have any vested rights in or to the fund or any part thereof except the right of the qualified employees, or their dependents, or their beneficiaries or next-of-kin, to receive the benefits provided for in the plan to which they may be respectively entitled * * *". The rules and regulations provide that the trustees reserve the right in their sole discretion, but upon a non-discriminatory basis, to terminate or amend the amount and conditions of any benefit even though affecting claims which have already accrued, to alter or postpone the method of payment, and to amend any other provision of the rules and regulations.

The agreement and declaration of trust were executed in New York. The offices of the trustees are in New York. The fund is administered here. The declaration of trust provides that it "is executed and is accepted by the trustees in the State of New York, and, regardless of the domiciles of the parties hereto, shall be interpreted and governed in accordance with the laws of that State".

The motion poses a question which is of considerable importance to the trustees in the administration of a fund of this character. The precise question also appears to be one of first impression. The trustees' position is that the fund is a New York trust governed solely by

New York law and that under such law the trustees' sole duty and obligation is to pay the insurance monies to the beneficiary designated by the employee under the terms of the Plan and to no one else. They assert that the legal widow has no right to such funds, regardless of what the laws of the State of domicile may provide.

■ The provision that the agreement and declaration of trust shall be interpreted and governed in accordance with the laws of New York, regardless of the domiciles of the parties thereto, will be given effect by the court if there are pertinent contacts with New York. The trust was created in New York and its offices are here. Indeed, Section 12-a of the New York Personal Property Law provides that where there is such a stipulation the "validity and effect" of the trust agreement shall be determined by the laws of New York.[2]

■ Under such a stipulation the first question which arises is whether questions arising thereunder are to be decided by the whole New York law, including its conflicts rules, or just by New York internal law. See Siegelman v. Cunard White Star, 2 Cir., 221 F.2d 189, 194. It is not necessary, however, to go into that question here. For the agreement of the parties that the agreement and declaration "shall be interpreted and governed" in accordance with the New York law does not apply to the situation now before the court. It is limited to questions involving the validity, interpretation, construction or performance of the agreement as between the parties. Cf. Siegelman v. Cunard White Star, supra.

■ The declaration of trust is plainly valid and there is no question that the insurance benefits are payable thereunder. These benefits are in the nature of a property right arising out of the declaration of trust. What is involved here is whether plaintiff has a legal and enforcible claim to such a property right. While the property right arises by virtue of the agreement, plaintiff's claim thereto does not. It arises out of the Community Property Law of California governing the right of a spouse to community property wherever situated when the married persons are California domiciliaries. The parties to the declaration of trust cannot by agreement between themselves dictate what law shall govern the claims of a third party to a property right arising from the trust.

■ However, the situs of the property right to which plaintiff asserts a claim is in New York since the trust was created here, its offices are here, its business is carried on here and performance by the trustees is to be made here. Therefore, under well settled principles New York law will govern as to any claims to property or property rights situated here. But that is not because of the agreement of the parties, but because of the situs of the property within New York. When the New York law

2. Rights under the collective bargaining agreement which resulted in the plan are federally and not state created. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. It is arguable that a logical extension of this rule would place this agreement, authorized by Section 302 of the Taft-Hartley Law, 29 U.S.C.A. § 186, in the same posture. See Copra v. Suro, 1 Cir., 236 F.2d 107, 115. Even if this be so, however, the rights of the parties are remote from the collective bargaining process and no question is raised concerning the administration of the fund or union or employer rights. The issue here does not seem to be one on which Congress sought to impose a uniform national policy. Compare Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, with Bank of America National Trust & Savings Ass'n v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93, and see Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424. In any event even were "federal law" applicable to this situation, it would be logical to apply the general rule of conflicts of laws which is in accord with the New York rule. See Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 353 U.S. at page 457, 77 S.Ct. at page 918.

is applied for that reason rather than because of an agreement as to what law shall apply, the whole New York law, including its conflict rules, will apply and not the substantive law alone.

Viewing the problem in this light, its solution, though not without its difficulties, becomes reasonably plain.

It must be first determined what rule of law the New York courts would apply (Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477) to a claimant in the position of the plaintiff, a California widow whose matrimonial domicile was in California.

The rule in New York seems to be in accord with the general conflicts rule that interests of a spouse in personal property acquired by the other during marriage is determined by the law of the domicile of the parties when the property is acquired. Matter of Mesa v. Hernandez, 172 App.Div. 467, 159 N.Y.S. 59, affirmed 219 N.Y. 566, 114 N.E. 1069; Chesny v. Chesny, 197 Misc. 768, 94 N.Y.S.2d 674, reversed on other grounds 277 App.Div. 879, 98 N.Y.S.2d 151; see Travelers Ins. Co. v. Walden, D.C.Ala., 160 F.Supp. 845. See, also, Restatement of Conflict of Laws, § 290. Though the cases on the subject cited by the parties here are not particularly helpful, and research has not added much to the store of decisions, it seems reasonably plain that were the benefits here payable under an ordinary policy of life insurance the New York courts would apply this rule and would recognize the law of the place of domicile of the married parties as determining the widow's rights. See Matter of Mesa v. Hernandez, supra; Chesny v. Chesny, supra; New England Mutual Life Ins. Co. v. Spence, 2 Cir., 104 F.2d 665, 125 A.L.R. 1281.

The trustees, however, assert that the benefits payable under this Plan are quite different from those payable under ordinary policies of life insurance, for a number of reasons. They point out that the employee has no vested interest in the fund and that the determination of the benefits to be paid lies solely in the discretion of the trustees. They also assert that great difficulties and complications in the administration of the fund would arise were they required to make payments to anyone other than the named beneficiary, particularly in view of the fact that the beneficiaries are seamen whose domicile and matrimonial status and family relationships are often difficult to ascertain.

I do not think that either of these arguments are sufficient to require that a different rule be applied to these benefits than would be applied to the proceeds of ordinary life insurance. See Nagle v. Perkins, 130 Misc. 808, 815, 224 N.Y.S. 575. While it may be that the employee has no vested interest in the fund himself, as the declaration of trust provides (though this is not to say he has *no* enforcible rights as putative beneficiary, Hoffman v. Nagler, 206 Misc. 623, 134 N.Y.S.2d 335) that is not true of the beneficiaries upon his death. Upon the occurrence of that event whatever interest the beneficiary may have plainly becomes vested, subject only to the reserved powers of the trustees on a non-discriminatory basis to terminate or amend the conditions with respect to benefits or to alter or postpone the method of payment. Indeed, the non-vesting provision of the declaration expressly provides that there shall be no vested rights in the funds *except* the rights of beneficiaries or next-of-kin to receive the benefits to which they may be entitled.

I cannot visualize any insurmountable administrative difficulties arising from a determination that the rights of legal beneficiaries of a deceased employee are governed by the law of the State of the matrimonial domicile even though such law should on occasion require payment to other than the designated beneficiary. This problem is one which is faced constantly by those engaged in the business of life insurance. These trustees recognize that they are already faced with the same problem where there has been a failure to designate a beneficiary or the beneficiary no longer survives.

These are normal incidents to the administration of a fund of this character.[3]

It may be noted that the benefits here are denominated in the declaration of trust itself as "life insurance" and "accidental death insurance". The designation of beneficiary indicates, and it would seem logical to assume in the absence of evidence to the contrary, that the funds are the proceeds of group life insurance purchased by the Plan. I hold, at least for purposes of determining the applicable New York rule of conflicts, that the legal consequences are the same as if these funds were the proceeds of ordinary life insurance. Thus, under the law of New York, we must look to the law of California to determine the rights of the widow.

■ Under the California Community Property Laws it is clear that the surviving spouse is entitled to one-half of the proceeds of an insurance policy on the life of her husband, the premiums on which were paid with community funds, notwithstanding the husband's designation of another as beneficiary. The same result follows if the life insurance accrued from the earnings of the insured during coverture. Cullen v. Spremo, 142 Cal.App.2d 225, 298 P.2d 579; Grimm v. Grimm, 26 Cal.2d 173, 157 P.2d 841; Travelers Ins. Co. v. Walden, D.C.Ala., supra.

Even though, as I have already pointed out, the insurance benefits here in terms of legal consequences may be treated the same as proceeds of ordinary life insurance, the question remains whether they accrued from the decedent's earnings during his marriage.

The defendant trustees assert that the employer contributions which are the sole source of the funds for the Plan cannot be viewed as compensation to the decedent. They point out that the contributions are on a fixed rate per day per man and is not geared to the amount earned by the individual, that the contributions are not taxable to the individual as compensation, and that under the terms of the agreement the employee has no vested right in the fund. Nor are any benefits he might receive therefrom assignable.

But the California cases do not seem to turn on a nice analysis of whether an employee death benefit is to be viewed technically as "compensation" or "earnings". The California courts view the matter more practically. They hold that a community interest in the proceeds exists if there is some enforcible legal or equitable right in the underlying fund which arose within the contours of employment. Doyle v. Doyle, 44 Cal.App. 259, 186 P. 188; Crossan v. Crossan, 35 Cal.App.2d 39, 94 P.2d 609; Estate of Perryman, 133 Cal.App.2d 1, 283 P.2d 298; Gettman v. Los Angeles Dept. of Water & Power, 87 Cal.App.2d 862, 197 P.2d 817; Cullen v. Spremo, supra.

Under these decisions there seems no valid distinction to be drawn between benefits under a plan where the employers pay directly to the trustees and a plan which is financed through payroll deductions from employees. Indeed, in Crossan v. Crossan, supra, the argument was made that the proceeds of the fund did not bear any actuarial relationship to the contributions made and that therefore they could not be community property. This argument did not prevail.

The benefits under this fund can scarcely be considered as a mere gratuity. The employment by the shipowner is a sine qua non of participation in the benefits, as is membership in the union which made the agreement with the shipowners as a result of the collective bargaining process on behalf of and for the benefit of the employees. The resulting benefits, even though they may not be vested until the event occurs which requires their payment, directly arise out of the

---

3. It may be noted that in Blethen v. Pacific Mutual Ins. Co., 198 Cal. 91, 243 P. 431, the California Supreme Court held that an insurer who paid a designated beneficiary without notice of a claim based on a community property interest was discharged of further liability. This result is now codified in California. West's Ann.California Civil Code, § 161b.

employment and solely as a result thereof. I see nothing in the California cases which indicates that the California courts would consider the benefits in this case to be anything other than benefits arising and resulting from the employment itself and incident thereto, and as proceeds of the decedent's employment during his lifetime. Viewed in this light the benefits are plainly community property under the California law and the widow would be entitled to one-half of them regardless of any attempt by the husband to bar her from receiving her moiety by designation of another as beneficiary.

The defendant trustees have presented no authorities to the contrary. Such cases as Brotherhood of Railway Trainmen v. Benson, D.C.Minn., 45 F.2d 421, dealing only with the Community Property Law of the State of Washington which appears to be different from the comparable law of California, and Supreme Council of Royal Arcanum v. Behrend, 247 U.S. 394, 38 S.Ct. 522, 62 L.Ed. 1182, which does not involve the question of community property at all, are not in point. Nor is the fact that the contributions are not currently taxable earnings of the employee under the Federal income tax laws persuasive as the defendant trustees suggest. The mere fact that the employer contributions to the Plan are non-taxable to the employee under the Internal Revenue Code of 1954, 26 U.S.C.A. § 1 et seq., has little bearing on the question under the California Community Property Law which is presented here.

Since, therefore, under the law of California the legal widow of a decedent domiciled in California would be entitled to one-half of the proceeds of the insurance benefits payable under the National Maritime Union Pension Plan, the defendant trustees cannot succeed on their motion to dismiss the complaint for failure to state a claim, or, in the alternative, for summary judgment, and the motion must be denied.

This disposition of the motion is of course without prejudice to any further proceedings in the action by way of interpleader of the designated beneficiary or otherwise or the determination on a trial of the issues of fact which may be raised.

Settle order on notice.