Myhalyk *v.* Lewis, Appellant.

396

Argued September 30, 1959.   Before JONES, C. J., BELL, JONES, COHEN, BOK and MCBRIDE, JJ.

reargument refused March 10, 1960.

*Alexander Unkovic*, with him *A. E. Kountz*, and *Kountz, Fry & Meyer*, for appellants.

*Charles E. McKissock*, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 18, 1960:

The basic issue in this appeal is the amenability of the United Mine Workers of America Welfare and Retirement Fund (herein termed Fund) to a writ of for-

eign attachment issued in Pennsylvania. The determination of this issue is of vast importance not only to the Fund but also to hundreds of bituminous coal miners, resident in Pennsylvania, who, in the event that the Fund is not amenable to such writ of foreign attachment in this state, would be compelled to present claims against the Fund in the District of Columbia.

Pursuant to the provisions of Section 302(c) of the Labor Management Relations Act of 1947[1] certain bituminous coal operators and the United Mine Workers of America on March 5, 1950 entered into a written agreement which established the Fund. That agreement created the Fund as an "irrevocable trust" to be administered by three "trustees". Insofar as relevant, the stipulated facts are: (1) the office of the Fund—where its meetings are held and records maintained is in Washington, D. C.; (2) with the exception of the monthly royalties due from the coal operators, the assets of the Fund—all personalty—are located in Washington; (3) the Fund maintains two "area medical locations" in Pennsylvania—Johnstown and Pittsburgh—and numerous Pennsylvania residents have received and are receiving benefits from the Fund; (4) the Pennsylvania bituminous coal operators on the 10th of each month pay, by check, directly to the Fund's office in Washington all royalties due from them on coal mined during the preceding calendar month and such payments are deposited in the Fund's General Account in Washington; (5) the Fund has established in Washington another account known as the Pension Account utilized for the payment of pensions and annuities to beneficiaries of the Fund and "from time to time the Trustees by formal action provide for and direct the transfer of certain sums of money from the General

---

[1] Act of June 23, 1947, c. 120, Title III, §302(c) (5), 29 U.S.C.A. §186(c).

Account . . . . to the said separate Pension Account" to be used exclusively for the payment of pensions; (6) on numerous occasions in order to enforce the obligation of the coal operators to pay royalties into the Fund, the Fund has instituted legal proceedings in the Western and Middle District Federal Courts in Pennsylvania.

The *modus operandi* of the Fund is: the bituminous coal operators each month pay into the Fund forty (40¢) cents per ton for each ton of coal mined; from such moneys, the Fund makes disbursements (1) "for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or life insurance, disability and sickness insurance or accident insurance; (2) benefits with respect to wage loss not otherwise compensated for at all or adequately by tax supported agencies created by federal or State law; (3) benefits on account of sickness, temporary disability, permanent disability, death or retirement; (4) benefits for any and all other purposes which may be specified . . . .; and (5) benefits for all other related welfare purposes as may be determined by the Trustees . . . ."

Myhalyk, the appellee, a resident of Allegheny County, on December 12, 1958 caused a writ of foreign attachment, followed by a complaint, to be filed in the Court of Common Pleas of Allegheny County wherein the Fund's three trustees and the Fund were named defendants and the Pittsburgh Consolidation Coal Co., garnishee. Myhalyk's complaint averred, inter alia: (1) his place of residence and his membership in the United Mine Workers of America; (2) that the garnishee coal company had moneys in its possession due and owing to the Fund and to that extent the Fund had property whose situs was in Pennsylvania; (3) a

statement of the requirements set up by the Fund's trustees which must be met by applicants for pension benefits together with an averment that Myhalyk met such requirements; (4) that, on July 20, 1952, Myhalyk applied for pension benefits and that the Fund has not only refused to pay such pension benefits but has even refused to accept his application for such benefits. Myhalyk's complaint sought a judgment against the Fund and the issuance of a direction to the Fund that he, Myhalyk, be paid a monthly pension of $100 beginning July 20, 1952. Myhalyk and the garnishee entered into a stipulation wherein the garnishee agreed that it had in its possession $15,000 due the Fund and Myhalyk agreed that the garnishee pay all amounts in excess of $15,000 to the Fund. On January 21, 1959, counsel for the Fund and its trustees entered an appearance *de bene esse* and filed preliminary objections raising the question of the jurisdiction of the Court of Common Pleas of Allegheny County. After the parties had entered into a stipulation of facts, the Court below dismissed appellants' preliminary objections and that order is the subject of this appeal.

Appellants contend that the Fund is a trust, and, in view of Congress' ordination in the Labor-Management Act of 1947, supra, that a welfare fund be created and operated as a trust, the Pennsylvania courts must hold the Fund to be a trust; as a trust, the Fund and its trustees are not amenable to a writ of foreign attachment in Pennsylvania; in the event that the Pennsylvania courts assert jurisdiction, appellants are deprived of property without due process and equal protection of the law in violation of the Constitution of the United States.

Foreign attachment, an extraordinary process, can take place only within the framework of Rules 1251 et seq. of the Rules of Civil Procedure, 12 PS Appen-

dix. Rule 1252 provides that foreign attachment may be issued to attach property of a defendant when (1) defendant is a non-resident individual, although present in Pennsylvania, (2) defendant is a partnership or incorporated association without a regular place of business in Pennsylvania and the action is against defendant in its firm or association name, and (3) defendant is a foreign corporation or similar entity even though registered in Pennsylvania. To sustain a foreign attachment proceeding not only must non-residence and the situs of real or personal property within Pennsylvania be established (*Fairchild Engine & Airplane Corporation v. Bellanca Corporation*, 391 Pa. 177, 137 A. 2d 248) but the defendant must fall within one of the classifications embraced within Rule 1252, supra.

The identical problem herein presented was before the Superior Court in *Stampolis v. Lewis et al.*, 186 Pa. Superior Ct. 285, 142 A. 2d 248, alloc. ref. Supreme Ct., cert. den., 359 U. S. 907. Judge ERVIN, speaking for the majority of that Court, stated (pp. 287, 288): "The writ was issued pursuant to Pa. R. C. P. No. 1251 et seq., which provide that foreign attachment may be issued to attach the property of a defendant upon any cause of action at law or in equity in which the relief sought includes a judgment or decree for the payment of money when the defendant is an unincorporated association without a regular place of business in the Commonwealth or is a foreign corporation or similar entity. Rule No. 2151 defines 'association' as meaning an unincorporated association conducting any business or engaging in any activity of any nature whether for a profit or otherwise under a common name. Rule 2176 defines 'similar entity' as any insurance association or exchange or any other association which is regarded as an entity distinct from

the members composing the association. The word 'association' is defined in Black's Law Dictionary, Third Edition, as: 'The act of a number of persons in uniting together for some special purpose or business. The persons so joining. It is a word of vague meaning used to indicate a collection of persons who have joined together for a certain object.' 7 C.J.S. §1 sets forth that the word 'association' 'is used to indicate a collection of persons who have united or joined together for some special purpose or business . . . . The term "association" is often used as synonymous with "company" or "society" '."

*Pavlovscak v. Lewis et al.*, 274 F. 2d 523 (C.C.A. 3rd) (decided September 18, 1959), accepted the district court's interpretation of *Stampolis* as having "treated [the Fund] as a business unit suable in the same manner as an unincorporated association under Pennsylvania law" and stated that "the important thing is that the Stampolis decision is an authoritative Pennsylvania ruling that Pennsylvania procedural law treats this Fund, for purposes of suability and amenability to process, like an ordinary unincorporated association" and "It [Stampolis] treats the actual contacts of the Fund with Pennsylvania . . . as sufficient to bring it within the reach of the local courts." *Pavlovscak* does not acknowledge as correct *Stampolis'* conception of the Fund as an entity suable and amenable to process, but accepts it as "Pennsylvania procedure for handling suits against organized groups conducting business activity in that state." The importance of *Pavlovscak* is that it found "no constitutional objection to the position taken by Pennsylvania that this Fund may be sued in Pennsylvania as an unincorporated association doing business in that state" in that the stipulated facts indicated such substantial activity on the part of the Fund and such substantial di

rect impact of its activities in Pennsylvania as "to make it reasonable for the state to subject the entrepreneur to the jurisdiction of its courts."

Appellant takes the position that *Stampolis* overrules *Forrish v. Kennedy*, 377 Pa. 370, 105 A. 2d 67, and *Geron v. Kennedy*, 381 Pa. 97, 112 A. 2d 181. In neither *Forrish* nor *Geron* was the issue of the Fund's amenability to suit presented. The Fund in both cases was the Anthracite Health and Welfare Fund whose office is in Hazleton, Pa., and no question arose in either case concerning the jurisdiction of the court over the Fund. In both cases the Court dealt with the exercise of discretion on the part of the Fund's trustees —a matter of substantive, rather than procedural law. *Forrish* and *Geron* could coexist with *Stampolis* without any conflict, real or apparent.

Our problem is to determine the correctness of the ruling in *Stampolis*. In that connection it may be noted that our refusal of an allocatur in *Stampolis* is without significance: *Agoston v. Commonwealth of Pennsylvania*, 340 U. S. 844, 71 S. Ct. 9; *Kraemer v. Guarantee Trust & Safe Deposit Co.*, 173 Pa. 416, 419, 33 A. 1047.

That the Fund—*stipulated by the parties to be an "irrevocable trust"*—possesses all the legal attributes and characteristics of a trust is beyond question. The agreement which created the Fund arose as the result of Congressional action through the medium of the Labor-Management Act of 1947, supra, which permitted the creation and operation of such a Fund only as a trust. Other jurisdictions have recognized this Fund as a trust: *Ruth v. Lewis*, 166 F. Supp. 346 (D.C., D.C.); *Lewis et al. v. Quality Coal Corporation*, 243 F. 2d 769 (C.C.A. 7); *Yonce v. Miners Memorial Hospital Association, Inc., United Mine Workers of America Welfare and Retirement Fund et al.*, 161 F. Supp.

178 (D.C.W.D., Va.); *United Marine Division v. Essex Transportation Co.,* 216 F. 2d 410 (C.C.A. 3rd); *Van Horn v. Lewis,* 79 F. Supp. 541 (D.C., D.C.); *Hobbs v. Lewis,* 197 Tenn. 44, 270 S.W. 2d 352. An examination of the creation and method of operation of the Fund convinces us that the Fund is in all respects a bona fide trust and that John L. Lewis, Henry C. Schmidt and Josephine Roche are in fact trustees subject to various fiduciary duties which it is encumbent upon them to perform.

Under Rule 1252, supra, foreign attachment may be issued only against a defendant falling within the following categories: a non-resident individual, a partnership or an unincorporated association without a regular place of business in Pennsylvania and a foreign corporation or similar entity even though registered in Pennsylvania. Unless this trust falls within such categories, foreign attachment cannot issue.

Appellant urges that this Fund—a trust—falls neither within the category of an "unincorporated association" nor that of a "foreign corporation or similar entity" and, therefore, is not amenable to foreign attachment in Pennsylvania. After a careful examination of the circumstances surrounding the creation of this Fund and its *modus operandi* we are of the opinion that the Fund is not an "unincorporated association" as that term is employed in Rule 1252.[2] On the other hand, both within the legislative intendment of Rule 1252 and the definition of a "similar entity" in Rule 2176, this Fund is within the phrase "a foreign

---

[2] Such holding is not in conflict with *Stampolis,* supra, for a careful examination of that decision will reveal that its sole basis was "that the court below had jurisdiction of the res caught by the writ of foreign attachment". *Yonce v. Miners Memorial Hospital Association, Inc.,* etc., supra, makes clear the distinction between this Fund and an "unincorporated association".

corporation or similar entity". Granted that the Fund is not a "corporation", it does have the status of an "entity" and it is "foreign" in that it was created in a jurisdiction other than Pennsylvania. It is an "entity" which bears such a similarity to a "foreign corporation" for the purposes sought to be achieved by Rule 1252 as to bring it within the scope of the legislative intent that it be amenable to foreign attachment. There is no more reason to hold a "foreign corporation" amenable to foreign attachment than to hold this Fund amenable to such process: the same rationale exists in both instances.

Appellant next urges that, if the Fund is amenable to foreign attachment, there is no "res" of the Fund within Pennsylvania. The thrust of this argument is that the royalties in the hands of the garnishee coal company are not earmarked for the payment of pension benefits because such royalty payments under the terms of the Fund are made to the General Account of the Fund and do not reach the Pension Account until the Fund's trustees, in the exercise of their discretion, so determine. Such a contention is without merit. The sole source from which any pension benefits are paid by the Fund is the royalty payments made by the coal operators to the Fund: absent such payments there would be no moneys available to pay the pension benefits, payment of which is one of the stated objectives of the Fund. Whatever may be the bookkeeping methods of the Fund and the method of allocation on the Fund's books of the royalty payments when received, the fact remains that part of the royalty payments when received from the coal operators is eventually utilized for the payment of pensions. To hold otherwise would ignore the objectives of the Fund and attribute to the trustees an arbitrary attitude unjustified and unwarranted by the actual experience of the

operation of the Fund. An examination of the method of operation of the Fund, its stated purposes and its terms of origin satisfies us that the royalty payments due the Fund by the garnishee coal company constitute a sufficient "res" of the Fund to justify the attachment of our jurisdiction in this matter.

Lastly appellant contends that the subjection of this Fund to the jurisdiction of the Pennsylvania courts would violate the United States Constitution. *Pavlovscak*, supra, has fully answered this contention.

To grant this Fund an immunity from amenability to foreign attachment in this state would be unconscionable. The Fund was created for the purpose of promoting and providing for the welfare and well being of miners who had worked in the bituminous coal fields and their families, a category which comprises literally thousands of residents of this state. If, as the appellant argues, the Fund is amenable only to the courts of the District of Columbia, then those for whom the Fund was created would have to process and litigate their claims in a forum far distant from their places of residence; the obvious consequence would be to impose upon them a harsh and unnecessary burden and necessitate the expenditure of considerable time and money on their part. Time and again when this same Fund seeks, through the federal courts, to make the coal operators pay their obligations into the Fund it comes into Pennsylvania. Now when those who are entitled to payment of welfare benefits from the Fund seek to enforce its obligations to pay such benefits the Fund objects to coming into Pennsylvania. No sound reason nor justification exists upon which to grant immunity to this Fund from amenability to the courts of this state.

Order affirmed.