**NATIONAL MARITIME UNION et al.,
Appellants,**

v.

**Alberta AUGUSTINE, Appellee.**

**No. 7156.**

Court of Civil Appeals of Texas,
Beaumont.

Sept. 24, 1970.

Mandell & Wright, Houston, for appellants.

Lamson & Plessala, Port Arthur, for appellee.

STEPHENSON, Justice.

This is an action by plaintiff, Alberta Augustine, to recover death benefits payable under the National Maritime Union Pension and Welfare Plan (hereinafter

called N.M.U. Plan). Trial was by jury, but judgment was directed by the court for plaintiff at the close of the evidence. Such judgment was for one-half of the death benefits less one-half of the funeral expense. The parties will be referred to here as they were in the trial court.

The uncontroverted evidence shows: Plaintiff and Joseph Kirby Augustine were married in 1955, and they were still married July 3, 1968, which was the date of his death. They had no children as issue of this marriage, however, he had three children by a previous marriage, including Shelva Jean Augustine. He died intestate. He had been a merchant seaman and a member of N.M.U. for many years. Plaintiff had been designated as beneficiary under the N.M.U. Plan in 1955, in 1962, and in 1964. Plaintiff filed suit for divorce in January, 1968. February 13, 1968, Shelva Jean Augustine was named as beneficiary and plaintiff removed under the N.M.U. Plan. Defendant received notice of plaintiff's claim to the benefits shortly after July 16, 1968, but made payment to Shelva Jean Augustine on September 22, 1968. It was admitted that Joseph Kirby Augustine was qualified for benefits under the N.M.U. Plan on the date of his death.

■ Defendant's first point of error is that the trial court erred in holding as a matter of law that the change in beneficiary executed by the husband was a constructive fraud as an attempt to defeat the wife's community claim to one-half of the death benefits. This point of error is overruled. The evidence shows, as a matter of law, that the change of beneficiary, under the circumstances of this case, constituted constructive fraud.

The evidence shows that neither plaintiff nor her husband owned any separate property and whatever property they owned was acquired with community funds. They purchased a home in 1963, but the testimony of a real estate appraiser showed the value of the home to be considerably less than the amount owed upon it on the date

of the change of beneficiary and on the date of his death. They owned an automobile, but it was mortgaged for an amount equal to its value. The furniture they owned was also mortgaged for more than its value. There were no other assets and according to the evidence, excluding the N.M.U. Plan benefits, the estate was insolvent. We approve of the conclusions reached in Davis v. Prudential Insurance Company of America, 331 F.2d 346 (5th Cir., 1964). In that case, the debts of the community exceeded the assets, at the time the husband, pending a divorce which was never granted, changed the beneficiary in a life insurance policy, from his wife to his mother. There was no finding of fraud in the trial court, but the Fifth Circuit Court stated specifically that the change of beneficiary under those circumstances constituted constructive fraud. Defendant cites the case of Brown v. Brown, 282 S.W.2d 90 (Tex.Civ.App.— Waco, 1955, error ref. n. r. e.) to support its position on this point of error. In the Brown case, the trial court found the husband left his wife community property of not less than $250,000.00 in value, and that Mrs. Brown was amply provided for from her share of the community estate, and that he did not name his children and grandchildren beneficiaries under any of the policies of insurance for the purpose of defrauding Mrs. Brown of any portion of their community property. By rendering judgment for plaintiff, the trial court in the present case made implied findings contrary to those in the Brown case.

■ Defendant's second point of error complains of the action of the trial court in applying the Texas Community Property Law in this case. The N.M.U. Plan provides in effect that the laws of the State of New York should govern the rights of the parties under such Plan. This point is overruled.

Defendant's pleadings in this case contain only a general denial and a plea that Joseph Kirby Augustine had designated

Shelva Jean Augustine as the beneficiary under the Plan and that she and the funeral expenses had been paid. There is no pleading as to the law of the State of New York. No mention is made anywhere in the statement of facts as to the law of the State of New York. The transcript does not contain a motion by defendant that the trial court take judicial knowledge of this law of the State of New York, as provided for by Rule 184a. Defendant has filed a motion in this court for us to direct the trial judge to file a supplemental statement of facts. Attached to such motion is an instrument designated "additional statement of facts." In substance, it is admitted that the attorney for defendant did not file a formal motion asking the court to take notice of the New York law, but at the close of the evidence, he informally presented his position and contended that New York was not a community property state and that the New York law should apply. He also stated that the attorney for plaintiff did not disagree nor object to his presentation. Even assuming everything in this proposed "additional statement of facts" to be true, defendant has not discharged the burden placed upon it. Defendant could have pled and proved the law of the State of New York, or it could have made the motion provided for under Rule 184a.* We have concluded that defendant has not complied in either manner. It is well settled law in this state that where no proof is made as to New York law, and no request is made under Rule 184a that the trial court take judicial notice of the New York law, that it is presumed that the law of the State of New York is the same as the law of the State of Texas. Ogletree v. Crates, 363 S.W.2d 431 (Tex.Sup., 1963); Van Hoose v.

Moore, 441 S.W.2d 597, 617 (Tex.Civ.App. —Amarillo, 1969, no writ); Harris v. Harris, 403 S.W.2d 445, 447 (Tex.Civ.App. —Houston, 1966, error ref. n. r. e.); Dohrmann v. Chandler, 435 S.W.2d 232, 235 (Tex.Civ.App.—Corpus Christi, 1968, no writ).

In any event, it does not appear that a contrary result would follow even if the New York law were applied. In a well-reasoned opinion, a Federal District Court in New York, interpreting an earlier version of the contract involved in this suit, came to the conclusion that California community property law controlled over the terms of the regulations, Boyd v. Curran, 166 F.Supp. 193, 198–199 (S.D.N.Y., 1958). The California law there applied is consistent with the community property law of Texas as announced in Davis v. Prudential, supra, followed in Freedman v. United States, 382 F.2d 742, 745 (5th Cir., 1967). See in this connection, Gaethje v. Gaethje, 8 Ariz.App. 47, 442 P.2d 870 (Ariz.Civ.App., 1968), comparing the community property laws of Texas, California, and Arizona in this particular field.

Finally, defendant contends that the trial court erred in concluding that the death benefits payable under the plan was community property under Texas law. It supports the argument so made by pointing to Article II, § 6 of the Rules and Regulations adopted by the trustees, reading:

"No Employer, nor the Union, nor the individual Employees shall have any vested rights in or to the Fund or any part thereof except the right of the qualified Employees, or their dependents, or their beneficiaries or next of kin, to receive the benefits provided for in the

* "The judge upon the motion of either party shall take judicial notice of the common law, public statutes, and court decisions of every other state, territory, or jurisdiction of the United States. Any party requesting that judicial notice be taken of such matter shall furnish the judge sufficient information to enable him properly to comply with the request, and shall give each adverse party such notice, if any, as the judge may deem necessary, to enable the adverse party fairly to prepare to meet the request. The rulings of the judge on such matters shall be subject to review. Promulgated by order of June 16, 1943, effective December 31, 1943; amended by order of October 10, 1945, effective February 1, 1946."

Plan to which they may be respectively entitled, * * *"

This contention, likewise, is answered by Boyd v. Curran, supra 166 F.Supp. at p. 197:

"While it may be that the employee has no vested interest in the fund himself, as the declaration of trust provides (though this is not to say he has *no* enforcible rights as putative beneficiary, Hoffman v. Nagler, 206 Misc. 623, 134 N.Y.S.2d 335) that is not true of the beneficiaries upon his death. Upon the occurrence of that event whatever interest the beneficiary may have plainly becomes vested, subject only to the reserved powers of the trustees on a nondiscriminatory basis to terminate or amend the conditions with respect to benefits or to alter or postpone the method of payment. Indeed, the non-vesting provision of the declaration expressly provides that there shall be no vested rights in the funds *except* the rights of beneficiaries or next-of-kin to receive the benefits to which they may be entitled." (Emphasis by the court.)

Upon the death of the insured member, the value of the benefits accruing under the provisions of the trust, purchased with community funds, is measured by the monetary benefits payable at that time. Davis v. Prudential, supra. Thus, under the terms of the trust itself, the benefits have then vested in the beneficiary. Boyd v. Curran, supra.

As an apparent afterthought, and without the citation of authorities in support thereof, defendant urges upon us the provisions of Article IV, § 2 of the Regulations saying that the payment by the Fund to the designated beneficiaries (deceased's daughters and the funeral home) "in such circumstances *completely* discharges the Plan of all obligations. [Emphasis in brief]" The provision relied upon reads as follows:

"The Trustees, by majority vote, shall have full authority to determine all questions of coverage and eligibility to participate in and receive the benefits of the Plan and shall have the power to construe the provisions of this Agreement and the terms used herein and any such question so determined or any construction so adopted by the majority of the Trustees shall be binding upon all parties and persons concerned."

We construe the identical set of Rules and Regulations which were involved in Speir v. National Maritime Union Pension and Welfare Plan, 449 S.W.2d 350 (Tex. Civ.App.—Houston, 1st Dist., 1969, error ref. n. r. e.), wherein Justice Coleman pointed out that the Plan was funded by contributions from employers and that neither the employee nor his beneficiary had a vested right in the proceeds thereof. The right of the labor union to govern the relationships between its members and the union is in no manner in issue in this case since we recognize the rule that such relationship is contractual in nature. Dyer v. Occidental Life Ins. Co., 182 F.2d 127, 17 A.L.R.2d 923 (9th Cir., 1950); Adams v. International Brotherhood of Boilermakers, etc., 262 F.2d 835, 838 (10th Cir., 1958), and cases therein cited. Both of the authorities last cited involved insurance contracts subject to the union charter and by-laws.

On the other hand, we have held that upon the death of the member, the rights of the parties became fixed according to Texas law governing community property rights. This last contention as so advanced, if sustained, would oust Texas courts of jurisdiction to adjudicate the property rights of its own citizens. This we decline to do. See, in this connection, Myhalyk v. Lewis, 398 Pa. 395, 158 A.2d 305, 88 A.L.R.2d 486, 493 (Penn.Sup., 1960). Indeed, to sustain the contention of defendant would do violence to Texas law. As was said in Wampler v. Harrington,

261 S.W.2d 883, 891 (Tex.Civ.App.—Tex-arkana, 1953, error ref., n. r. e.):

"Any contract the result of which would modify established law or deprive the courts of their power to protect private rights and liabilities is contrary to public policy and void. [citations omitted]"

Having considered carefully all of the points brought foreward, and finding no error, the judgment of the trial court is affirmed.