Carroll F. Burgoon, M. D., and Jane S. Burgoon, M. D., His Wife, and Burgoon Antiques, Inc. v. Zoning Hearing Board of Charlestown Twp., Chester County.

Argued February 9, 1971 before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO and MENCER. Judge ROGERS disqualified himself.

240

*Joseph F. Harvey,* with him *MacElree, Platt & Harvey,* for appellants.

*Leonard Sugerman,* with him *Sugerman, Massinger & Weiss,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., May 26, 1971:

Appellants sought to continue to utilize three tracts of land in Charlestown Township, Chester County, as an Equestrian Center with the stated purpose of: ". . . instructing pupils in the techniques of horsemanship, . . ."[1] They applied to the Zoning Hearing Board of Charlestown Township for a special exception as an "educational use" and it found that the use was not "educational" and rejected the application. The Court of Common Pleas of Chester County affirmed. Both erred.

---

[1] Fox Hollow Farms Equestrian Center advertises itself as "Pennsylvania's Only Accredited School of Equitation." Its advertisements contain the following statement of philosophy: "Instruction at Fox Hollow Farms is based on a balanced seat with a Middle school training method, adaptable for dressage, cross country, stadium jumping, showing, hunting and pleasure riding. Our aim is to produce confident, quiet, poised and elegant horses and riders. In teaching the rider, we concentrate on position as the keynote to balance both on the flat and for jumping. In training the horse, emphasis is placed on improving the natural movement by balancing and suppleness through a systematic sequence of exercises."

The appellants, individual and corporate, own three contiguous tracts of land zoned F R Farm Residential. The individual appellants have owned and operated upon these tracts since May 1966, an equestrian training center known as Fox Hollow Farms Equestrian Center, Inc. In April 1967, the Zoning Board of Adjustment (now Zoning Hearing Board) of the Township granted appellants a special exception to operate the equestrian center as an educational use.[2] The Court of Common Pleas of Chester County hearing the appeal reversed the Zoning Board. In its opinion, the court said: "Considering the whole scope of the ordinance we hold that Burgoons' and Burgoon Antiques, Inc.'s use of their land is not an educational use within its provisions; that on this record its operations as a whole are not a charitable or philanthropic use; that on the contrary, such use is a commercial one and not permissible under special exception." An application to the Supreme Court under Rule 68½ for special allowance of appeal followed and in due course it was denied.

On June 13, 1968, Fox Hollow Farms Equestrian Center, Inc., was awarded by the State Board of Private Academic Schools, Pennsylvania Department of Public Instruction, a "license to operate or conduct a Private Academic School or Class in Tutoring Equestrian Arts."[3] Moreover, since September 1967, the Cen-

---

[2] Section 400 of the Charlestown Township Zoning Ordinance of 1950 reads in part: "Use regulations . . . a lot may be used or occupied, for any of the following purposes, and no other: E. Any of the following purposes when authorized as a Special Exception. 1. Educational, religious, charitable or philanthropic use, excluding correctional or penal institution."

[3] Act of 1947, P. L. 951, as amended, 24 P.S. §2731 et seq. provides for the licensing of a "Private Academic School" which it defines as follows: ". . . a school maintained, or classes conducted, for the purpose of offering instruction for a considera-

ter has been providing equestrian instruction to area school and college students for which they receive course credits toward their academic degrees.

Relying on these changed circumstances, the owners have appealed a cease and desist order issued by the Board. In addition, they again seek a special exception for their "educational use". The denial of the special exception and the cease and desist order were affirmed by the court below. Under Section 402(4) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, No. 223, 17 P.S. §211.402(4), the decision of the Zoning Hearing Board as affirmed by the court is now before us.[4]

By agreement of counsel, the record before the Board, the Court of Common Pleas and this Court includes the testimony adduced at the first special exception hearing as well as that presented to support the present application. Appellees urge us to affirm the position taken by the court below which held that the single question on appeal here is: "Is the use sought to be made an 'educational use' under the amended

---

tion, profit or tuition, to five or more pupils at one and the same time, or to twenty-five or more pupils during any school year, the purpose of which is to educate an individual generally or specially or to prepare an individual for more advanced study, and shall include all schools, engaged in such education, except private trade schools, private business schools, private corresponding schools, private music schools, private dance schools, private art schools, private dramatic schools, private schools of charm or poise, private driver training schools, or any type of private school which is non-academic in character."

[4] Where, as in this case, the court below took no additional testimony, our review is limited to the narrow issue of whether the *Board* committed a manifest abuse of discretion or an error of law. *Village 2 at New Hope, Inc. Appeals*, 429 Pa. 626, 241 A. 2d 81 (1968); *Di Santo v. Zoning Bd. of Adj.*, 410 Pa. 331, 189 A. 2d 135 (1963).

ordinance[5] and the terms of the license issued by the Department of Public Instruction so as to be the subject of a special exception?" Appellees urge us to separate the two episodes in the sequence of events and find that the prior determination that an "educational use" was not established is sealed off from further consideration and thus donning the blinkers we would base our judgment as to whether the hurdle had been crossed by the evidence of academic credits and the Department of Instruction's recognition of Fox Farm Equestrian Center, Inc., educational status standing alone.

In short, appellee would have us hold that the final opinion of the court below (1967) is *stare decisis.* While the holdings of the Courts of Common Pleas should not be passed over lightly by appellate courts, they do not *bind* us. *Orban v. Makarczyk,* 166 Pa. Super. 523, 72 A. 2d 606 (1950). Nor does the subsequent refusal to hear appeal by the Supreme Court, as in the instant case, elevate the decision of the court below to that position. ". . . the allowance or refusal of the appeal must not be taken as an indication of any opinion on the merits of the decision or the correctness of the application of legal principles in the particular case." *Kramer v. Guarantee Trust and Safe Deposit Co.,* 173 Pa. 416, 419, 33 A. 1047 (1896) ; see also, *Myhalyk v. Lewis,* 398 Pa. 395, 158 A. 2d 305 (1960). Since the facts and legal questions in the appeal before us are essentially the same as those in the previous appeal, the initial opinion of the court below would be especially persuasive.[6] Notwithstanding, after careful

---

[5] The amendment to the zoning ordinance relating to accessory uses in A R districts was at issue before the Board but has not been raised in this appeal.

[6] See *Dougherty v. Proctor & Schwartz,* 317 Pa. 363, 176 A. 439 (1935).

consideration, we hold that the court below committed a clear error of law in its interpretation "educational use".

The Supreme Court in *Gilden Appeal*, 406 Pa. 484, 492, 178 A. 2d 562 (1962) described "educational" as follows: "The word taken in its full sense, is a broad, comprehensive term, and may be particularly directed to either mental, moral, or physical faculties, but in its broadest and best sense it embraces them all, and includes, not merely the instructions received at school, college, or university, but the whole course of training —moral, intellectual and physical."

In the absence of any definition to the contrary in the zoning ordinance, the term . . . [educational use] . . . as used in the ordinance must be presumed to have been employed in its broadest sense, . . . The court below, emphasizing the phrase "embraces them all", has concluded that to be "educational" a use must involve moral, intellectual *and* physical training. While we may disagree with that court's finding that the appellants use narrowly construed does not include the entire spectrum,[7] its legal conclusion is based on the lame premise that every concept of academic instruction with its consequences is essential to the finding that a use is educational. Indeed, is it reasonable to say that *Gilden* stands for the proposition that an accredited private university is not educational if it fails to include in its curriculum instruction in physical education? The language in *Gilden* clearly directs itself at *"either mental, moral or physical faculties"* and *"embraces them all . . . not merely the instructions received at school, . . ."* (emphasis added). In its "broadest sense" the term "educational use" in the Charles-

---

[7] The appellants' instruction includes the art of dressage, competition rules and judging technique which would seem in themselves to touch on moral, academic and physical training.

town ordinance encompasses institutions which conduct moral, intellectual *or* physical training.[8] The court below erred in demanding specifically classified training in every phase of academic pursuit. Having reached this result, we find it unnecessary to discuss the intermingling of moral, intellectual and physical training in the instant case.

The original opinion of the court below also held that "educational use" required a non-commercial use. With this we cannot agree. Section 400(E)(1) of the Township ordinance provides for a special exception as an "Educational, religious, charitable or philanthropic use." As stated in *Gilden,* these terms must be given their broadest meanings. Any restriction on their use must be explicit and strictly construed. *Rolling Green Golf Club Case,* 374 Pa. 450, 97 A. 2d 523 (1953). It is clear from the construction of Section 400(E)(1) that "educational", "religious", "charitable", and "philanthropic" are independent adjectives and do not modify each other. Construing the ordinance strictly it displays no intent to limit "educational uses". This being so, we find that the court erred initially in requiring educational uses to be non-commercial and, in fact, to a great extent the later opinion of the court below disavowed this position.

The later opinion, now before us, accurately states the prevailing case law: "In the final analysis the *nature of the use made* and not the *identity of the user* of the land determines whether appellants' activities may be permitted: *Russian Orthodox Church Appeal,*

---

[8] We do not necessarily find the decision of the Court of Common Pleas of Montgomery County in *Fitzwatertown Civic Assn. v. Upper Dublin Twp.,* 81 Montg. Co. L.R. 24 (1962), in conflict with our decision in the present case. In *Fitzwatertown,* the court held that the local ordinance so defined "educational" in a manner which limited it to "institutions of learning" in the normal sense. Therefore, the establishment of an aquatic school was denied.

397 Pa. 126, especially 128-29 [152 A. 2d 489 (1959)]."
(Emphasis original.)

The record reveals abundant uncontradicted testimony as to the instructional nature of the equestrian center—moral, intellectual, or physical. Three trained professionals were employed to instruct in dressage, cross-country riding, hunting, horse care and stadium jumping, instructing in such techniques and courses as cavalletti, lungeing, plaiting, mucking out, grooming, and many others pursuing the programs of the U. S. Combined Training Association. Moreover, Fox Hollow Farms Equestrian Center, Inc., has in its curriculum a program directed toward qualifying its students to instruct in the Equestrian Art.[9] Horses are available only to those taking riding instruction. Accredited educational institutions, among others Bryn Mawr College, included instruction at the Center as part of their physical education programs. The Center is licensed as a Private Academic School by the Department of Public Instruction. We find the holding of the Board in following the dictates of the lower court as set forth in its original opinion that the use

---

[9] The findings of fact of the Board of Adjustment (1969) contain the following statement: "Appellants prepared and submitted to the Department of Public Instruction a curriculum consisting of a twelve-week course leading to an assistant instructor's diploma and a curriculum consisting of a two-year course leading to an instructor's certificate. Said curricula were admitted in evidence as appellants' Exhibits 2 and 3. Upon completion of the two-year course, a person would receive a certificate from the school which would entitle him to be an instructor in the equestrian arts, but appellants concede that such certificates are granted by so few places in the United States that such a certificate is not recognized by any association or group." The Board erred in placing its emphasis upon the recognition of the certificate. This is immaterial to the issue of whether the course of instruction is educational. The relevancy of this finding is in the relationship of the curricula in educating future equestrian instructors.

was not educational, was both a manifest abuse of discretion in light of the testimony presented and an error of law in light of *Gilden, supra.*

Appellee suggests, *and the court below so held,* that the issuance of the Private Academic School license was of minimal probative value. The Private Academic School Act[10] does not authorize licenses to "private trade . . . business . . . correspondence . . . music . . . dance . . . art . . . dramatic . . . charm or poise . . . [or] . . . driver-training schools, *or any type of private school which is nonacademic in character."* However, implicit in the license is a finding by the Department of Public Instruction that the equestrian center is "academic" in nature. While this finding is not binding on the court, being an official act by the Commonwealth founded in an investigation and report which details the facts supporting its conclusion, it should be accorded greater consideration and validity than the summary disposal which was afforded it by the lower court. The Board erred by ignoring the action of the Department solely because it had *doubt* that the use rose above the status "nonacademic in character."[11] On the basis of findings by the appropriate agency whose special duty requires supervision of academic processes, there must be clearly enunciated valid reasons for disregarding its findings as evidence.

The Court of Common Pleas of Chester County has held that little league baseball is an educational use although it was nonacademic in the generally accepted use of the term. *Kirk Zoning Appeal,* 12 Ches. Co. Rep.

---

[10] See note 3, supra.

[11] It also appears that the Board lost sight of the fact that the question of whether a use is academic or nonacademic is much narrower than the issue of educational use. Therefore, testimony that a use is "academic" would have great probative value as to the broader question of whether the use is "educational".

229 (1964). Judge KURTZ there correctly read *Gilden's* definition of "educational use" and found it did not require moral, academic *and* physical instruction.

Appellee argues in five parts why neither *Kirk* nor *Gilden* countenances the use sought:

(1) Appellants' operation is a common commercial enterprise;

(2) Appellants charge fees designed to produce a profit;

(3) Appellants use its premises at least sixty hours a week while the *Kirk* use was for only eighty hours a year;

(4) Appellants do not teach fair play, discipline, teamwork and tolerance as in *Kirk;* and

(5) Appellants will instruct anyone who can pay while *Kirk* was limited to a target group.

None of these distinctions has *any* merit and of them only contention number four addresses itself to the educational nature of the use. Common sense dictates, but for our purpose it need not be elaborated, that equestrian training does in fact embody these attributes. The requested use in the case before us includes academic, moral *and* physical training and the fact that equestrian instruction calls for the use of a whip and a hurdle and not a bat and a pitcher's mound is immaterial.

When the term "educational" defines uses which are permitted, it is both permissive and restrictive. Without further limiting definition, the permissive nature of the phrase must be taken in its *"broadest sense." Gilden, supra.* On the other hand, any restrictive nature ascribed to the phrase must be taken in its strictest sense. *Rolling Green, supra.* This accords the landowner the benefit of the least restricted use and enjoyment of his land.

It is clear in reviewing the record that the use requested meets the "broadest" definition of "educational". Moreover, the ordinance is devoid of any specific restriction which would prohibit the intended use. The contrary holding of the Zoning Hearing Board was erroneous. Order reversed.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent for two reasons.

First: I agree with the lower court's conclusion as expressed in its opinion as follows: "Considering the whole scope of the ordinance we hold that Burgoons' and Burgoon Antiques, Inc.'s use of their lands is not an educational use within its provisions; that on this record its operations as a whole are not a charitable or philanthropic use; that on the contrary, such use is a commercial one and not permissible under special exception."

Second: When the Supreme Court of Pennsylvania refused the appellants' application under its Rule 68½ for a special allowance of appeal, the case was concluded and the lower court's order became *absolutely final*. The appellants should not now be able to reopen and retry the original case under a collateral proceeding dealing with a cease and desist order issued by the Zoning Board. Neither should changed circumstances which are the result of appellants' efforts and activities be sufficient to breathe new life into a case that has ended in accordance with normal legal procedures. Even if we now would assume that new factors and circumstances would merit the granting of a special exception to the appellants, the method of making such a determination would be a new request to the Board for a special exception, not a further review of a proceeding that has been legally concluded.