Lower Moreland Township *v.* Shell Oil
Company and White.

Argued June 3, 1971, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MANDERINO and ROGERS.

*Charles K. Plotnick,* with him *Jerome H. Harwitz,* Solicitor, and *Miller, Harwitz & Plotnick,* for appellant.

*Marlyn F. Smith,* with him *High, Swartz, Roberts & Seidel,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., September 9, 1971:

The Zoning Hearing Board of Lower Moreland Township, Montgomery County, rejected appellant's application which would change an existing nonconforming use as allowed by special exception under the Township Zoning Ordinance. On appeal, the Court of Common Pleas of Montgomery County reversed the Board's decision. We affirm the lower court.

"Where, as in this case, the court below took no additional testimony, our review is limited to one narrow issue. Did the *Board* commit a manifest abuse of discretion or an error of law? Village 2 at New Hope, Inc. Appeals, 429 Pa. 626, 241 A. 2d 81 (1968); Di Santo v. Zoning Board of Adjustment, 410 Pa. 331, 189 A. 2d 135 (1963); Burgoon v. Zoning Hearing Bd., 2 Pa. Commonwealth Ct. 238 (1971)." *Rees v. Zoning Hearing Board,* 2 Pa. Commonwealth Ct. 551 (1971). So, notwithstanding the decision of the court below, our function is to independently determine the validity of the Board's action.

Appellees are the owner and conditional lessee of a presently nonconforming commercial use in a residen-

tial section of the Township. The existing use is a myriad of uses, all nonconforming, which include a gasoline station, a small grocery and a beer distributorship. Strange as it may seem, they are all housed in the same building. These enterprises, with the exception of the gasoline concession which is leased out and only pumps gasoline, are all operated by appellee Charles F. White. In addition, all three operations are in vigorous competition in their respective markets. For example, the gasoline concession pumps the greatest monthly gallonage of any station in the Township.

It is appellees' intention to discontinue dispensing beer and groceries, demolish the structure and erect a modern automotive service station. What they want to do is to abandon two of the three nonconforming uses and limit the operation to the third.

Application for this change was made pursuant to Article X, Section 1001(2) of the Lower Moreland Township Zoning Ordinance which provides in part: "A non-conforming use of a building or land may be changed to another non-conforming use of the same or more restricted classification when authorized as a special exception by the Board of Adjustment after public hearing. . . ." The Board after taking testimony denied appellees' application for the special exception, and on appeal the Common Pleas Court of Montgomery County reversed. Hence, this appeal to us.

The Board's opinion gives the following reasons for its decision: "Such use would be of a less restricted classification which is not authorized by Section 1001 (2). Enlarging the size of the gas station and adding minor repairs to the permitted uses of the premises clearly would increase the degree of nonconformance with the surrounding 'L' Residence District as compared to the present use of the premises as a neighborhood retail grocery and general store also selling beer as well as having two gasoline pumps on the premises.

"The proposed use would additionally be less restrictive in that creating a service station area out of the entire premises would make those premises considerably less neighborhood oriented, all to the detriment of the surrounding properties and residents.

"The proposed use of the land as a service station would put a greater portion of the premises under pavement so as to accommodate the additional pumps islands and to accommodate the traffic moving to and from the pumps. As a consequence, surface flow of waters would be expected to increase in this area already largely developed.

"The proposed use would detract from the character of the surrounding 'L' Residence District and would not serve the best interests of the community or the Township. Nor is the proposed change consistent with the spirit, purpose or intent of the Township Zoning Ordinance."

We say the Board erred in law by concluding that the requested change would result in a less restricted use. Section 1001(2) permits by special exception changes to uses of the "same or more restricted classification." The Board neglected to consider the classification of the present use and the requested use.

The three uses which presently occupy the premises are all "D-Commercial." Section 801 of the ordinance permits a "retail store; . . . motor vehicle service station or sales agency, when authorized as a special exception . . . [and] . . . a distributing station for milk and other beverages, when authorized as a special exception . . ." in D-Commercial Districts. Since the exact use to be discontinued was a combination of these commercial uses, it should be so classified. Indeed, Section 801 permits in commercial districts "any use of the same general character as any of the above permitted uses, when authorized as a special exception. . . ."

The ordinance does not consider each individual permitted commercial use as a separate classification for the purposes of Section 1001(2). The reasonable interpretation of the ordinance would be to hold "D-Commercial" uses as *one* classification. This being so, the present uses and the requested use are in the same *classification*. Therefore, it is immaterial for the purpose of Section 1001(2) that the "degree of non-conformance" increases. As long as the requested gasoline service station complies with special exception requirements, Section 1001(2) allows appellee to adapt his property to that use. Single permissible uses do not void voluntary abandonment of one or many multiple permissible uses.

For the purposes of Section 1001(2), it is also immaterial that the Board found the proposed use to be less restrictive because it caters to transient clientele. The test of Section 1001(2) must be *classifications* under the ordinance and so the nature of the appellees' business is of no moment so long as it conforms to the use specifically ordained. In requiring a special exception under Section 1001(2), the Township has given the Board the means to protect its citizens against avoidable property damages. It has not, if the applicant is in the valid classification, given the Board the power to pick and choose which specific use it prefers in that location.

The remaining findings upon which the Board based its denial of the special exception all evidence a manifest abuse of discretion. It concluded that the paving of a portion of the lot would increase surface water flow. The record indisputably reveals that any surface water problem existing now is the result of an inadequate drainage system on the premises. Appellees have repeatedly vowed their intention to make the necessary alterations to alleviate the problem. In our judgment,

there is nothing to consider substantial evidence upon which to base a conclusion that surface water would increase and be detrimental to the surrounding area.

Also, the Board concluded that the proposed use was not "consistent with the spirit, purpose or intent of the Township Zoning Ordinance." This we disposed of above in considering Section 1001(2). The technical plans for the station comply with applicable ordinance provisions. Any other seeming inconsistencies with the spirit of the ordinance result from the very nature of the use as *nonconforming*. We find these effects not to be inconsistent with the spirit of the ordinance and cannot sustain the action of the Board.

The record in this case paints the perfect portrait of a Board, which for whatever reasons it chooses to ascribe, succumbs to community pressures. It shades the coloring to meet the emotional response rather than function as it was intended in the cold gray dawn by protecting the interests of both the community *and* the property owner. In spite of voluminous testimony describing the nature of the present use, especially relating to the gasoline concession, it characterized that as merely "two gasoline pumps on the premises" of a grocery store. It ignored appellees' expert witnesses whose testimony materially concerned the effects on property values and traffic congestion. In short, it of its own or by frenzy of neighbors, anticipated more gasoline stations yet to come, potential mismanagement of the proposed use and traffic volume disturbing their heretofore rural quiet. As much as we sympathize with the well meaning and sound attitudes of folks who prefer life as it is, other people and their property interests must be considered. To maintain the *status quo,* there must be substantial evidence submitted to the Board to turn back the clear intent of the ordinance. This we cannot find in the record.

Nowhere can we find a more succinct and legally adequate conclusion than that of Judge LOWE in his opinion below: "In considering an application for a special exception, the Zoning Hearing Board must evaluate the evidence, make factual determinations, and decide if the application is consistent with the public interest as that interest is defined in the ordinance. Valley Forge Industries, Inc., Appeal, 406 Pa. 387 (1962). Unrebutted testimony of a traffic engineer indicates that the elimination of the nonconforming retail uses will decrease the traffic flow. Safety would be promoted by the enlargement of ingress and egress accesses. The structural improvement, appropriately landscaped, would be smaller than that currently on the site, and all set-back and area requirements would be satisfied. Screening by means of a basketweave fence would be provided. The applicants have brought themselves within the terms and provisions of the ordinance, and because this particular ordinance contains no provision shifting the burden of proof to the applicant, it follows the requested special exception should have been granted. Delaware County Community College Appeal, 534 Pa. 264 (1969), Lower Merion Township v. Enokay, Inc., 427 Pa. 128 (1967), Jacobi v. Zoning Board of Adjustment, 413 Pa. 286 (1964), Archbishop O'Hara's Appeal, 389 Pa. 35 (1957)."

Shell Oil Company, throughout the hearing displayed a willingness to accept Board-imposed conditions upon the operation of the proposed service station. This demonstrates a spirit of community cooperation which will, if all applications are as in the appeal before us, tend to alleviate the concern of neighbors. Reasonable men making and accepting reasonable concessions will reduce the constant barrage of zoning disputes. Therefore, we direct the court below to modify its order remanding this matter to the Board, and

therein to direct the Board to condition the grant of the requested special exception upon the conditions which the record reveals the appellees are in agreement.

Lest it go unnoticed, we recognize that the Board also denied a variance which would permit an increase in the size of appellees' proposed advertising sign. The court below remanded consideration of this issue to the Board with the direction to "grant a variance for a reasonable increase". This issue was raised in passing in this appeal, and since we are in accord with the disposition accorded it by the court below, we affirm its order.

### Order

And Now, this 9th day of September, 1971, the order of the Court of Common Pleas of Montgomery County is affirmed, and the matter is remanded to the court for modification consistent with this opinion and for transmittal to the Zoning Hearing Board of Lower Moreland Township for further consideration consistent with that order as modified.

Judge Rogers concurs in result only.