Michael C. DiNardo, Appellant, *v.* City of Pittsburgh, Appellee.

Argued May 9, 1974, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.

*Martin W. Sheerer,* with him *Dillman, Sheerer & Schuchert,* for appellant.

*D. R. Pellegrini,* Assistant City Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE BLATT, September 30, 1974:

This is an appeal from an order of the Court of Common Pleas of Allegheny County affirming a decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board) which, after granting a hearing, denied the application of the appellant Michael C. DiNardo for an occupancy permit based upon a nonconforming use.

DiNardo appeals as the owner of an undeveloped parcel of land acquired in 1957 in the Fourth Ward of the City of Pittsburgh. He is also an officer and shareholder of Fred DiNardo & Sons, Inc., a construction contracting firm, which has used the land, probably since 1953, for the storage of construction materials and heavy equipment. In 1960 DiNardo had obtained a City building permit permitting him to excavate the slope on the land and to construct a retaining wall at one end, thus making the property more suitable for the use to which it was then being put.

The Zoning Code of May 10, 1958, Ordinance No. 192, classified the property here concerned as Residential 4, and the earlier Zoning Code of August 9, 1923, Ordinance No. 372, had similarly classified the property as Class A, Residential. The present use of the property, therefore, was not permissible under either Code. After complaints arose with regard to the use of the property, an application was made to the zoning administrator in 1971 for an occupancy permit, which in-

dicated that the property was being used pursuant to a valid nonconforming use. This application was denied on January 26, 1971, and, after an appeal was filed, a hearing was conducted on February 11, 1971 before the Board and testimony was taken. Within three weeks, the Board denied the permit, and an appeal to the Court of Common Pleas followed. Without taking additional testimony, the lower court affirmed the Board's ruling, and DiNardo then appealed to this Court.

In a zoning case where the court below has taken no additional testimony, our review is limited to a determination as to whether or not the Zoning Board has abused its discretion or committed an error of law. *AFSO Builders, Inc. v. The Zoning Hearing Board of the Township of Upper Darby,* 12 Pa. Commonwealth Ct. 100, 314 A. 2d 860 (1974). The appellant herein contends that the Board did commit an abuse of discretion when it concluded that a valid nonconforming use had not been established, and that such a conclusion was not supported by competent testimony. He also contends that the Board and the court below both misapplied the law in concluding that there had been an unlawful enlargement of a nonconforming use.

Our review of the record reveals, unfortunately, that the Board's written decision refusing the occupancy permit does not expressly indicate that a nonconforming use had not been created. If, in their opinion, such a use had been created, the Board then failed to indicate expressly that the evidence established an abandonment of the use or a change in the use, either of which would have constituted sufficient reasons to deny the appellant's application. Nevertheless, in spite of these shortcomings in the Board's ruling, it had sufficient evidence, as disclosed in the record, to support a decision based on any of these possibilities. And, regardless of which alternative the Board may in fact have

adopted, the Board did not abuse its discretion or misapply the law in making its decision.

Considering the appellant's first argument, we would note that a nonconforming use is a use of land "which does not comply with the applicable use provisions in a zoning ordinance . . . where such use was lawfully in existence prior to the enactment of such ordinance. . . ." The Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, *as amended*, 53 P.S. §10107 (13.1). The applicable residential use provision here dates back to 1923. Thus, for the creation of a nonconforming use on the subject parcel, said use should antedate the 1923 ordinance. Not surprisingly, the record shows that only two witnesses presented testimony as to the condition of the parcel prior to 1923, namely, Fred DiNardo for the appellant, and Lucy Marino for the appellee.[1] The testimony of these two witnesses as to the nature of the then existing use was, of course, contradictory. Fred DiNardo, allegedly familiar with the property since 1913, stated that the property was used both as a brickyard and as a place for timber storage by a contractor who jacked up houses, and that it was not, therefore, in conformity with the subsequently enacted residential zoning requirements. On the other hand, Lucy Marino, allegedly familiar with the property since 1906, testified that no activity took place on the subject property whatsover. Since the testimony of Fred DiNardo, who is the father of the appellant and the founder of the appellant's company herein, presents an

---

[1] The appellant now questions for the first time the validity of the testimony of the appellee's witnesses as having been unsworn. Although the evidence conflicts on that point, it is well settled that matters not raised before the court below do not come within our scope of review. *Bamash v. Zoning Board of Adjustment*, 11 Pa. Commonwealth Ct. 420, 313 A. 2d 370 (1974) ; *Sojtori v. Zoning Hearing Board*, 6 Pa. Commonwealth Ct. 552, 296 A. 2d 532 (1972). Consequently, we shall accord full weight to the testimony.

obvious credibility problem, we can find no abuse of discretion by the Board in its having given greater credence to the testimony of Lucy Marino. And, inasmuch as there was no evidence of ill will, impartiality, prejudice or any other conduct by the Board suggestive of an abuse of discretion, we must find that the Board justifiably concluded that a nonconforming use had not been created before the adoption of the first zoning code.

Even had a valid nonconforming use been established, however, the Board might yet have concluded that such use had been abandoned between the 1923 enactment and the 1953 usage by DiNardo. Under the Zoning Code of 1923, if a nonconforming use was "discontinued," it could not be resumed. *Kiddy's Appeal,* 294 Pa. 209, 143 A. 909 (1928). And to have this legal effect, "discontinued must be the equivalent of 'abandonment.'" *Haller Baking Company's Appeal,* 295 Pa. 257, 145 A. 77 (1928). We have previously held that the concept of abandonment includes the intention to abandon which is to be assumed from overt acts or failure to act, as well as from statements and circumstances. *Hilltown Township v. Horn,* 13 Pa. Commonwealth Ct. 248, 320 A. 2d 153 (1974). In addition, we have held that a one year period of abandonment is not unreasonably short to toll the nonconforming use. *Marchese v. Norristown Borough Zoning Board of Adjustment,* 2 Pa. Commonwealth Ct. 84, 277 A. 2d 176 (1971). In the instant case, thirty years had elapsed from the enactment of the 1923 ordinance to the commencement of DiNardo's current use. It is true, of course, that four witnesses, all but one of whom were either employed or otherwise interested in the DiNardo contracting business, testified on the appellant's behalf as to the use of the property during those years, and their testimony developed the impression that the parcel was used to store timbers and other materials for business in which houses were moved from their foundations and then re-

located. On the other hand, however, two opposition witnesses, both long-time residents of the neighborhood, testified that the property in question was not in use at all prior to DiNardo's acquisition of it in 1957. They testified that another lot, since developed for residential purposes, was used by the house-moving business. Moreover, the City had acquired the property in 1949 from a user who had died or otherwise relinquished the property at that time, and, although there was no direct evidence that the property was not used during the City's tenure, there is also no evidence that the City leased or otherwise officially authorized the use of the property. This circumstance, along with the testimony of the neighborhood witnesses could well have provided sufficient evidence for the Board to conclude that any prior nonconforming use of the property was abandoned, at least between 1949 when the City acquired it and 1953 when Fred DiNardo & Sons, Inc. are said to have begun using it, whether with or without permission. In any event, the Board was in a position to evaluate and give weight to the testimony of all witnesses and to conclude that, whatever the use of the property had been in 1923, such use had been abandoned prior both to the Fred DiNardo & Sons, Inc. usage in 1953 and to the appellant's acquisition in 1957, and we find no evidence of abuse of discretion by the Board in such a decision.

Finally, even had there been no abandonment of a valid nonconforming use at the time of DiNardo's acquisition, the Board nevertheless might still have concluded that DiNardo's activities constituted an unlawful change of usage, a usage which the appellant characterizes as an enlargement. It is true that constitutional limitations require that in zoning cases, nonconforming uses, though not favorites of the law, must be permitted to continue and naturally expand to accommodate increased trade provided such expansion is not

detrimental to the public health, welfare and safety. *Philadelphia v. Angelone,* 3 Pa. Commonwealth Ct. 119, 280 A. 2d 672 (1971). After a cessation of activity by an owner, however, a mere casual, occasional and infrequent return to the original activity is not sufficient to continue or renew a prior nonconforming use, nor can a new, separate and distinct enterprise gain the protection of the prior nonconforming use. *West Mifflin v. Zoning Hearing Board,* 3 Pa. Commonwealth Ct. 485, 284 A. 2d 320 (1971). The City of Pittsburgh Zoning Code of 1958 incorporates this rule in Section 2703-1(a), which reads: "Where no structure is on the land . . . and a nonconforming use exists, the nonconforming use . . . (2) may not be enlarged in any way or be added to *or changed to another nonconforming use.*" (Emphasis added.) The evidence presented at the hearing indicated that, prior to DiNardo's acquisition, the parcel in question, if used at all, was used primarily for the storage of timber and materials necessary for the house-moving business. DiNardo now uses the property, however, for equipment storage, and such storage includes frequent transporting of heavy contracting machinery, including power shovels and air compressors. This is a use much different in nature from the earlier use described. In other cases, similar changes in use have been disapproved: the erection of a gasoline station on a property formerly used as both a residence and a used car business, *Hanna v. Board of Adjustment,* 408 Pa. 306, 183 A. 2d 539 (1962); the opening of a beer distributorship in the basement of a building having a grocery store, *Lance Appeal,* 399 Pa. 311, 159 A. 2d 715 (1960); and the installation of an industrial machinery manufacturing and repair shop in a building previously used as a grocery store and delivery truck repair garage. *Williams Appeal,* 174 Pa. Superior Ct. 570, 102 A. 2d 186 (1954). Certainly, in the instant case, with competent evidence on the point, it would not have been an

abuse of discretion for the Board to have concluded that the appellant's activities constituted an invalid change from the earlier usage of the property. The fact that a building permit was granted to the appellants to excavate the property does not in any way constitute permission to vary the use of the property with disregard to zoning regulations.

We would stress again, as we did in *Marchese v. Norristown Borough Zoning Board of Adjustment,* 2 Pa. Commonwealth Ct. 84, 277 A. 2d 176 (1971), that the law accords sympathetic and broad protection to activities on land which do not conform to the zoning restrictions at the time such restrictions are made by extending relief to landowners against avoidable hardships. At the same time, however, the law encourages rapid universal conformity with zoning regulations. Here the Zoning Board, if not convinced that a nonconforming use had been established, rightfully sought to bring the appellant's property into conformity with the scheme of the zoning regulations, and this Court, finding no abuse of discretion or misapplication of the law by the Board in reaching its conclusions, must sustain the Board's action.

The order of the court below, therefore, is affirmed.