Thomas J. Lawrence and Marie Lawrence, Appellants, *v.* Zoning Hearing Board of Lower Gwynedd Township, Appellee.

Argued April 4, 1975, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Arthur Lefkoe,* with him, of counsel, *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellants.

*John S. Manos,* for intervening property owners on behalf of appellee.

OPINION BY JUDGE CRUMLISH, JR., May 19, 1975:

This is an appeal by protesting neighbors from an order of the Court of Common Pleas of Montgomery County affirming a decision of the Zoning Hearing Board of Lower Gwynedd Township which sustained the continued operation of a dog kennel as a non-conforming use in a residential zone of Lower Gwynedd Township. As no additional evidence was taken by the court below, our review is limited to a determination of whether the zoning board committed a manifest abuse of discretion or an error of law. *Lower Moreland Township v. Shell Oil Co.,* 3 Pa. Commonwealth Ct. 259, 281 A. 2d 207 (1971).

In 1965, James and Ethel Brannon (Intervening Appellees herein) purchased a 12 acre tract of land in Lower Gwynedd Township containing, in addition to a private residence and barn, three concrete dog kennels

capable of housing as many as 70 dogs. These kennels were constructed by the prior owners, the Thayers, long before the adoption in 1941 of a zoning ordinance prohibiting such use, and it is undisputed that the kennels were maintained continuously by the Thayers for the breeding, raising, *occasional boarding,* and selling of show dogs. Although there were obvious commercial overtones to the prior operation, the record establishes that the Thayers' primary purpose in maintaining the kennel was their love for dogs and any remuneration received therefrom was incidental. The record is similarly undisputed that the Brannons, who purchased the property from the Thayer estate, immediately housed their own two dogs in the kennel and soon thereafter began boarding dogs for neighbors and friends. A fee of $2.50 per day was charged for this service, with each individual owner supplying food for his or her dog. Although the number of dogs boarded apparently fluctuated and at times there were 13 in residence, Mr. Brannon testified that the kennel normally was limited in boarders to eight or nine dogs because "when you get above that it sort of takes the hobby away from it."

Appellants contend that the Brannons' kennel is an entirely different use from the previously established nonconforming use because it involves the commercial boarding of other persons' dogs, whereas the Thayers' operation was limited to the private breeding, maintenance, and selling of their own dogs. Although constitutionally protected, nonconforming uses are not favorites of the law, and the use or change in use permitted by an ordinance providing for the continuation of nonconforming uses will be strictly construed.[1] *William*

---

1. Section 2306 of the Lower Gwynedd Township zoning ordinance permits the continuation of a nonconforming use, with any change therein only to a same or higher classification. As the ordinance does not provide for a use similar to a dog kennel in any other classification, Intervening Appellee does not rely upon Section 2306.

*Chersky Joint Enterprises v. Board of Adjustment,* 426 Pa. 33, 231 A. 2d 757 (1967) ; *Philadelphia v. Angelone,* 3 Pa. Commonwealth Ct. 119, 280 A. 2d 672 (1971). As stated by Justice (now Chief Justice) JONES in *Hanna v. Board of Adjustment,* 408 Pa. 306, 312-314, 183 A. 2d 539, 543-4 (1962):

"A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township or other community by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent. Molnar v. G. B. Henne & Co., Inc., 377 Pa. 571, 581, 105 A.2d 325. The continuance of nonconforming uses under zoning ordinances is countenanced because it avoids the imposition of a hardship upon the property owner and because the refusal of the continuance of a non-conforming use would be of doubtful constitutionality. Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses. Nonconforming uses, inconsistent with a basic purpose of zoning, represent conditions which should be reduced to conformity as speedily as is compatible with the law and the Constitution. The fact that a new contemplated nonconforming use of the property is no more detrimental or less objectionable than the existing use is of no consequence: Williams Appeal, 174 Pa. Superior Ct. 570, 580, 102 A. 2d 186.

. . . .

"The use of the property which the ordinance protects, or 'freezes,' is the use which was in existence at the time of the passage of the ordinance or the change of a use district (Upper Darby Township Appeal, 391 Pa. 347, 138 A. 2d 99; Lance Appeal, 399 Pa. 311, 159 A. 2d 715) but it offers no protection to a use

*different* from the use in existence when the ordinance was passed. The latter does not render the ordinance invalid. The nonconforming use which is within the orbit of protection of the law and the Constitution is the *nonconforming* use which exists at the time of the passage of the zoning ordinance or the change in a use district under a zoning ordinance, not a *new* or *different* nonconforming use." (Emphasis in original.)

After a careful review of the record before us, we cannot conclude that the zoning board committed a manifest abuse of discretion or error of law in finding that the present use of the property is a continuation of the nonconforming use as it existed prior to the adoption of the zoning ordinance. The record amply supports the zoning board's finding that, in addition to the hobby breeding of pedigree dogs, the Thayers' kennel operation involved the occasional boarding of dogs and a widely advertised breeding service and sale of pups. The Brannons' kennel involves the same ultimate use, i.e., the housing of dogs; a utilization of the same facilities; and is of the same commercial nature, though certainly of a less intensive nature. The change in operations from principally a *breeding* kennel to principally a *boarding* kennel is not of such a material nature to amount to a change in use. *See Upper Providence Township Appeal,* 414 Pa. 46,198 A.2d 522 (1964) [sustaining a change of nonconforming amusement park to day camp and swim-club] ; *Buckingham Township v. Bary,* 22 Pa. D & C 2d 274 (1960) [nonconforming private zoo charging no admission fee to a commercial zoo charging a fee]. We are in full accord with the lower court's observation that "both operations had a distinctly commercial aspect, and both reflect the interest of the owners in dogs." As there has been no change in the physical or incidental commercial aspects of the use, the Brannons' continuation of the dog kennel is constitutionally protected.

Order affirmed.