C. Howard Muse et ux. and Charles H. Muse, Jr. v. The Zoning Hearing Board of Ben Avon Heights Borough and Shannopin Country Club. Charles H. Muse, Jr., Appellant.

Argued May 8, 1980, before Judges MENCER, CRAIG and MacPHAIL, sitting as a panel of three.

*Robert W. Watson, Jr.*, of *Reed, Smith, Shaw & McClay*, for appellant.

*Robert B. Shust, Tener, Van Kirk, Wolf & Moore*, with him *Thomas F. Nelson, Kirkpatrick, Lockhart, Johnson & Hutchinson*, for appellees.

Opinion by Judge Craig, June 23, 1980:

Charles H. Muse, Jr. (objector) appeals from the May 1, 1979 order of the Court of Common Pleas of Allegheny County affirming the action of the Zoning Hearing Board of Ben Avon Heights Borough (board) which dismissed appellant's appeal from the grant of a permit to intervening appellee Shannopin Country Club (Shannopin) for construction of tennis courts on Shannopin property in the borough.

The Ben Avon Heights Zoning Ordinance of 1952 classified the entire borough as a residential district; there is no question that Shannopin, before and since that time, has maintained and operated a country club on its property. Currently, the club offers golf, swimming, platform or paddle tennis, and skeet shooting, and also various activities conducted in its clubhouse. In late 1974, Shannopin's officers applied for and were granted a permit to construct tennis courts in an area of Shannopin's property which shares a boundary with objector's land. On appeal, the board affirmed the zoning officer's grant of the permit for the proposed courts as a reasonable expansion or extension of Shannopin's non-conforming use. Judge Watson, of the court below, without taking additional evidence, affirmed the board's decision, and this appeal followed, requiring us to decide whether the board abused its discretion or erred as a matter of law.[1]

In this case, accepting the legal non-conforming use status of Shannopin's country club, we must be guided by the now well-established principles govern-

---

[1] When the court below receives no new evidence, our review is limited to a determination of whether the zoning board committed a manifest abuse of discretion or an error of law. *Reinert v. Weisenberg Township Zoning Board*, 48 Pa. Commonwealth Ct. 519, 410 A.2d 915 (1980) ; *Lawrence v. Zoning Hearing Board of Lower Gwynedd Township*, 19 Pa. Commonwealth Ct. 128, 338 A.2d 779 (1975).

ing expansion of such uses, under general rules apart from specific ordinance provisions. Those principles were capsulized in *Philadelphia v. Angelone,* 3 Pa. Commonwealth Ct. 119, 280 A.2d 672 (1971), where Judge ROGERS wrote:

> With respect to the question before us in this matter, certain principles have been developed which are clear, reasonable and consistent with constitutional principles. Structures may be erected on open land previously devoted to a non-conforming use, as of right. However, the erection of structures upon land not previously so used, may only be accomplished by way of variance. . . . Pierce Appeal, 384 Pa. 100, 119 A.2d 506 (1956) ; Mack Appeal, 384 Pa. 586, 122 A.2d 48 (1956).

3 Pa. Commonwealth Ct. at 128, 280 A.2d at 677.

Thus, in reviewing the board's approval of the expansion without a variance, the threshold question is whether the land on which Shannopin proposes to locate the courts has been devoted to the country club's non-conforming use. The record reveals that the proposed location has been consistently maintained, at least as a part of Shannopin's landscaped greensward, and that it has been used for intermittent golf instruction, as part of a practice area, and to some extent for vehicle parking. To counter that evidence of usage, appellant points to the testimony of Shannopin's golf pro, which indicated that the proposed site was never the intended target area, but was rather the inadvertent off-target destination of practice shots; appellant urges that those uses demonstrated by Shannopin are plainly casual and therefore the land is undevoted or "new" land within the doctrine of expansion.

We are not persuaded that the board erred in concluding that the land in question has been devoted to

Shannopin's non-conforming use. As in *DiNardo v. City of Pittsburgh*, 15 Pa. Commonwealth Ct. 279, 325 A.2d 654 (1974), we will not re-evaluate the weight and credibility of the conflicting testimony adduced before the board. Moreover, the testimony as to the kinetic use being intermittent or inadvertent does not compel a conclusion that the use has been meaningless, just as the rough should not be treated as apart from a golf course simply on the ground that it is an object of avoidance rather than desire.

Because no abuse is manifest in the board's conclusion that the location was in fact devoted to Shannopin's non-conforming use, Shannopin is therefore entitled to erect a structure in furtherance of that use. Clearly, the construction of tennis courts is a natural expansion of Shannopin's country club activity; the increasing demand for racquet sports facilities as alternative recreational activities is plain in our society today.

Objector also contends that the board abused its discretion in concluding that the proposed tennis courts will not be detrimental to the public welfare, safety or health. Admittedly, the doctrine of natural expansion yields when it is demonstrated that the proposed expansion is unreasonable or detrimental to the welfare of the community. *Township of Lower Yoder v. Weinzierl*, 2 Pa. Commonwealth Ct. 289, 276 A.2d 579 (1971). In that regard, the board found that the courts would cause "some amount of noise, traffic and obstruction of view, but not disproportionate to the other recreational uses now conducted at the Club, including the use of the swimming pool immediately adjacent to the proposed general site." We have reviewed the record carefully, and we find no abuse of discretion on the board's part in so concluding.

As another element of alleged public detriment, objector argues that the construction of the courts on

the proposed site will alter the present drainage pattern, resulting in increased run-off from Shannopin's property onto objector's adjacent land, with consequent increased erosion there. Objector also alleges a danger in the potential for landslides at the location.

These propositions, supported by engineering testimony, were squarely contested by testimony of Shannopin's consulting engineer and its landscape architect, whose testimony indicated that the run-off problem and landslide potential would be minimal if the courts were constructed according to their recommendations. Moreover, even objector's engineering testimony indicated that the danger could be minimized with proper construction and grading.

As to the landslide danger, the board found that "it has been demonstrated that the courts can be constructed in such a manner as to avoid any potential danger [from landslides] to the public health, safety or welfare." We can find no error or abuse of discretion in that conclusion.[2]

With reference to the increased rate of water run-off onto objector's property due to the topographic changes associated with the construction, the board stated that some erosion was likely to occur, "although the severity of such erosion is not apparent." We hold that the board properly concluded, notwithstanding the possibility of such erosion, that

> [i]n any event, this is a matter which would affect only the Appellants, not the general public or even the other residents in the immediate

---

[2] We agree with the board that, because its province is the propriety of the proposed courts under the zoning ordinance, and not under a building code, it could not assume "that the Club and its architects and contractors will not take the soil conditions and landslide possibilities into consideration in proceeding with the construction of the proposed tennis courts. Therefore the risk to the public health, safety and welfare is not readily apparent."

vicinity. Although the Appellants are members of the public, the determination of property rights between two adjoining landowners is essentially private in nature. In short, we do not regard the erosion possibility in this case as the type of danger to the public health, safety and welfare that would constitute grounds for refusing a reasonable expansion of a nonconforming use.

*See Sanko v. Zoning Hearing Board*, 6 Pa. Commonwealth Ct. 73, 293 A.2d 141 (1972), expressing the analogous principle that zoning boards may be concerned with matters akin to public nuisance, but not private nuisance.

Lastly, objector contends that the board abused its discretion in finding that the proposed courts conform to the height and setback regulations contained in the ordinance. This challenge is on two points: (1) the height of the enclosure fence to surround the courts (12 feet) exceeds the maximum fence height allowed by the ordinance (6 feet); and (2) the excavation, backfilling and rip-rapping associated with the courts will extend to appellant's property line.

We find no error in the board's decision that the contemplated fencing is an integral part of the tennis court structure itself and thus not such a fence as the ordinance governs in imposing the height limitations. *See: Jones v. Zoning Hearing Board*, 7 Pa. Commonwealth Ct. 284, 290, 298 A.2d 664 (1972), treating the fence as part of the tennis court and not subject to regulation as a structure, and also *Klein v. Township of Lower Macungie*, 39 Pa. Commonwealth Ct. 81, 395 A.2d 609 (1978).

We also agree with the board's conclusion that the cutting, filling, and rip-rapping are elements of site preparation, not independent structures subject to the setback requirements of the ordinance.

Accordingly, we will affirm the order of the court below.

### Order

And Now, this 23rd day of June, 1980, the May 1, 1979 order of the Court of Common Pleas of Allegheny County at No. SA 605 of 1975, is affirmed.