539 A.2d 1375

Appeal of Eureka Stone Quarry, Inc. from decision of the Newtown Area Joint Zoning Hearing Board.

Appeal of Eureka Stone Quarry, Inc. from decision of the Wrightstown Township Zoning Hearing Board. Eureka Stone Quarry, Inc., Appellant.

Argued June 9, 1987, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*John A. VanLuvanee,* with him, *John S. Skoutelas, Eastburn and Gray,* for appellant.

*Terry W. Clemons, Clemons and Klimpl,* for appellee.

OPINION BY JUDGE DOYLE, March 28, 1988:

This case is another in a series of continuing conflicts between Eureka Stone Quarry, Inc. (Eureka) and Wrightstown Township (Township) and involves the consolidated appeals of Eureka from two-cease-and-desist orders issued by the Township zoning officer.

The quarry operated by Eureka consists of two separate parcels (one 21.277 acres; the other 9.185 acres), and is known as the Rush Valley II Quarry. Quarrying activity has been conducted at this location since 1898, although Eureka has only operated the quarry since 1969.

There are two walls of the quarry which are relevant to this appeal. The northeastern face of the quarry abuts the New Hope and Ivyland Railroad (NH&I). The distance from the face of the quarry to the property boundary on the northeastern side of the quarry varies from 40 to 190 feet. The last extraction of stone occurred on this face of the quarry in 1968. Eureka holds a permit from the Department of Environmental Resources (DER) which would allow Eureka to extract stone to within twenty-five feet of the property boundary of this face of the quarry.

The northwestern face of the quarry abuts Swamp Road. The distance from the quarry face to Swamp Road ranges from 60 to 225 feet. This face of the quarry

was stripped of trees, vegetation and overburden[1] sometime prior to 1962, and the last stone was extracted from this area in approximately 1962. Another one of Eureka's DER permits would allow it to extract stone to within 100 feet of Swamp Road.

In December 1971, the Township enacted a zoning ordinance pursuant to the provisions of the Pennsylvania Municipalities Planning Code (MPC),[2] and zoned Eureka's property QA (Quarry-Agricultural). Section 403.1 of the 1971 Township zoning ordinance contained the following setback restrictions for quarries:

> *Setback.* No extraction shall be conducted closer than two hundred (200) feet to the boundary of any district in which extraction is permitted nor closer than three hundred (300) feet from the center line of any street . . . nor closer than four hundred (400) feet to the point of intersection of center lines of two streets.

In 1976, the Township enacted a new zoning ordinance and Section 405.G.11(a) of the 1976 ordinance contained the identical setback provisions for quarries, but further added that "[t]he setback area shall not be used for any other use in conjunction with the extraction except access streets, berms, screening, landscaping and signs." Both the northeast and northwest faces of the quarry are entirely within these setback restrictions.

In May, 1980, Eureka attempted to start stripping the overburden from the northeastern face of the quarry in preparation for extraction of stone. The Township zoning officer issued a cease-and-desist order against

---

[1] "Overburden" is the dirt and shale lying just above the extractable stone.

[2] Act of July 31, 1968, P.L. 805 *as amended*, 53 P.S. §10101-11202.

Eureka, *inter alia,* enjoining it from further quarrying activity on the northeast face of the quarry. Eureka appealed the zoning officer's order to the Wrightstown Township Zoning Hearing Board (Board), and alternatively, filed a request for a variance. The Board ruled that Eureka could not extract stone from the northeast face of the quarry, thereby upholding that portion of the zoning officer's cease-and-desist order. The Board also ruled that Eureka had failed to show the unnecessary hardship required for a variance and failed also to show that the expansion of its use would not be detrimental to the public. Eureka then appealed the Board's decision to the Court of Common Pleas of Bucks County.

Sometime during 1983, the Township joined with Newtown Borough, Newtown Township and Upper Makefield Township to form the Newtown Area Joint Zoning Hearing Board (Joint Board), pursuant to the provisions of Section 904 of the MPC.[3] The Township also enacted in 1983 the Joint Municipal Zoning Ordinance (JMZO). This ordinance, superseded and repealed the Wrightstown Township Zoning Ordinance of 1976, and by Section 703.B.2 of the JMZO provided for minimum 200 foot "side" and "rear" yard setbacks in quarry use areas, a minimum 300 foot "front yard" setback measured from the center line of any street, and a minimum 400 foot setback from the point of intersection of center line of two streets.

In late August, 1984, Eureka placed a drilling rig within the setback area along the northwest face of the quarry and then drilled holes in order to facilitate the placement of explosives to begin the extraction of stone. Shortly thereafter, on September 5, 1984, the Township zoning officer issued a second cease-and-desist order against Eureka.

---

[3] 53 P.S. §10904.

Eureka appealed to the Joint Board arguing that excavation of stone within the setback areas was either a permitted use, or the continuation of a use of a nonconforming structure permitted under Section 1203.A of the JMZO, or the expansion of a nonconforming structure permitted under Section 1208.B of the JMZO. Alternatively, Eureka requested that a variance be granted. On October 17, 1984, while Eureka's appeal was still pending before the Joint Board, Section 803.B.14(1) of the JMZO was amended to read as follows:

> No extraction shall be conducted closer than two hundred (200) feet to the boundary of any district in which extraction is permitted nor closer than three hundred (300) feet from the center line of any street, nor closer than four hundred (400) feet to the point of intersection of the Center lines of two streets. The setback area shall not be used for any other use in conjunction with extraction except access streets, berms, screening, landscaping and signs.

Subsequently, the Joint Board held that Eureka had no right to quarry stone within the setback area and that it was not entitled to a variance. Eureka again appealed to the court of common pleas and the court consolidated this appeal with Eureka's appeal from the 1981 Board decision.[4] The trial court, without taking additional evidence, affirmed both the Board and Joint Board decisions. This appeal follows.[5]

---

[4] We note that Eureka never attempted to proceed with its appeal from the 1981 Board decision for a period of five years.

[5] Eureka in this case asked the prothonotary of the court of common pleas to reduce the trial judge's September 2, 1986 order to judgment so that an appeal could be taken to this Court. This need not be done, however, because appeals in zoning cases are governed by Sections 1001-1011 of the MPC, 53 P.S. §11001-11011,

It is well settled that our scope of review in a zoning appeal, where the common pleas court takes no additional evidence, is limited to determining whether the zoning hearing board committed a manifest abuse of discretion or an error of law. *Valley View Civic Assn. v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). A zoning hearing board abuses its discretion when its findings are not supported by substantial evidence. *Id. See also* Section 1010 of the MPC.[6]

## Whether Eureka Established a Dimensional Pre-Existing Nonconforming Use

Eureka initially attacks the Board's and Joint Board's findings of fact. The Joint Board found that the last *extraction* of stone occurred from the northeast face of the quarry in 1960, while the Board found the last *quarrying activity* on that face had taken place in 1968. Eureka attacks these findings as inconsistent and unsupported by the evidence. Although we might agree that these findings may seem inconsistent, given that both findings were made from the record of the 1980 Board proceedings,[7] we hasten to add, however, that even assuming *arguendo* that the last *extraction* of stone from the northeast face of the quarry occurred in 1968, Eureka's case is not helped.

---

which contain no requirement that a common pleas court order be reduced to judgment prior to appeal to this Court. *Roth v. Zoning Hearing Board of Springfield Township*, 91 Pa. Commonwealth Ct. 445, 497 A.2d 295 (1985). Therefore, Eureka should have taken an immediate appeal of the September 2nd order, although the appeal was, in fact, timely filed in any event.

[6] Act of June 1, 1972, P.L. 333, *as amended*, 53 P.S. §11010.

[7] During the 1980 Board proceedings Stephen Wicen, a long-time area resident testified that he had not seen extraction of stone from the northeast face of the quarry since 1960. Testimony was also elicited during these same proceedings, however, from the for-

Eureka also objects to the Joint Board's finding that no extraction of stone occurred from the northwest face of the quarry, after 1970. This finding is supported by substantial evidence as Harry Robinson, a former employee of the previous owner of the quarry, testified that the last extraction of stone took place from the northwest face of the quarry in 1962. Eureka's objection to this finding is that the Joint Board erred in failing to accept the testimony of Mr. Measey, Eureka's quarry administrator, that Eureka had extracted stone from the Swamp Road face of the quarry after 1970. A zoning hearing board is, when the trial court takes no additional evidence, the sole judge of the credibility of witnesses and the weight to be given their testimony, *Muse v. Zoning Hearing Board of Ben Avon Heights Borough,* 52 Pa. Commonwealth Ct. 287, 415 A.2d 1255 (1980), and is free to reject even uncontradicted testimony it finds lacking in credibility. *Cf. Richland Township v. Hellerman,* 30 Pa. Commonwealth Ct. 438, 373 A.2d 1367 (1977). Therefore, we must uphold the Joint Board's findings.

Eureka also attacks the findings of the Board and Joint Board on the ground that extraction activities have occurred within the setback area for the northeast and northwest faces since 1970. Indeed, the assertion might be technically correct, but what the Township has allowed is Eureka to quarry vertically within the walls of the quarry. The Board and Joint Board's findings of fact

mer operator of the Eureka quarry, Jack Kauffman, that the last extraction of stone from the northeast quarry face took place in 1967 or 1968. Mr. Kauffman's testimony is somewhat supported by that of Beverly Wilson, who has resided adjacent to the northeast quarry face since 1968, and who testified that no extraction of stone has taken place on the northeast face of the quarry since she had been living there. This testimony from the 1980 Board proceedings was admitted by agreement into the proceedings before the Joint Board in 1986.

are, however, solely concerned with the extraction of stone from within the setback areas along the northeast and northwest faces of the quarry. The Township could allow Eureka to quarry vertically because this activity in no way increased the nonconformity along the northeast and northwest faces with regard to the setback requirements.

Eureka's attack on the findings of fact of the Board and Joint Board are based on an erroneous premise. Eureka basically contends that because it had extracted stone from the northeast and northwest *faces* of the quarry at a time prior to the enactment of Section 403.1 of the 1971 Township Zoning ordinance, and from the places *within* the northeast and northwest setback areas after that date, it should now be able to extract stone to the full extent allowed by its DER permits. This case does not, however, involve a *nonconforming* use where such evidence might be relevant to the issue of whether the nonconforming use had been abandoned. This case involves a *dimensional* nonconformity. Since no quarrying was taking place on either the northeast or northwest faces in 1971, the nonconformity of these quarry faces with regard to the Township's setback requirement became fixed upon the enactment of Section 403.1 of the 1971 ordinance. Even if Eureka had been quarrying on the northeast and northwest faces on the effective date of the 1971 ordinance, Eureka would still have had no right to continue the incursion into the setback areas. *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 451 A.2d 1002 (1982) has held, "a property owner does not have a vested right under the doctrine of natural expansion to extend a non-conforming setback beyond that which existed at the time the new ordinance was passed." *Id.* at 92, 451 A.2d at 1008.

## WHETHER EUREKA'S ATTEMPTED EXTRACTION OF STONE FROM THE NORTHWEST FACE OF THE QUARRY WAS A PERMITTED USE BETWEEN PASSAGE OF THE JMZO AND OCTOBER 17, 1984, THE DATE THE JMZO WAS AMENDED

Eureka next argues that the extraction of stone from within the setback areas along the northwest face of the quarry was permitted between the passage of the JMZO and the October 17, 1984 amendment to Section 803.G.14(1) of the JMZO. At the time of its original passage in 1983, Section 703.B.2 of the JMZO provided that quarry uses must have 300 foot front yards. The 300 foot "front yard" was to be measured from the centerline of any street. The ordinance further provided that the "front yard" setback also had to be a minimum of 400 feet from the point of intersection of the centerlines of two streets. Neither Section of the JMZO at that time specifically prohibited the extraction of stone from the existing quarry face within the setback area.

Eureka appears to be making two arguments in this regard. First, Eureka argues that there were no setback provisions at all applicable to its quarry between the passage of the JMZO and the amendment on October 17, 1984. This is because Section 281 of the JMZO defines yard as:

> An open space unobstructed from the ground up on the same lot with a structure, and extending along a lot line or street inward to the structure. The size of a required yard shall be measured as the shortest distance between the structure and a lot line or street line.

Section 273 of the JMZO defines "structure" as:

> A combination of materials assembled, constructed, or created at a fixed location, including a building, the use of which requires location on the ground or attachment to something having location on the ground.

Eureka basically argues that since there are no *structures* on its quarry property, there are no setback requirements pertaining to its quarry. It also argues that when it began drilling activity within the setback area on the northwest face, it established a new nonconforming setback use.

We find Section 703.B.2 to be highly ambiguous. Section 703.B.2 uses the term "yard". Section 281 commands that a yard be measured from the structure on the property outward toward the street *or* an adjacent property lot line. Section 703.B.2, however, measures the front yard only from the center line of any street. This creates an ambiguity even as to the way in which setbacks are to be measured, and generally any ambiguity in a zoning ordinance is to be resolved in favor of the landowner. *Heck v. Zoning Hearing Board for Harveys Lake Borough,* 39 Pa. Commonwealth Ct. 570, 397 A.2d 15 (1979). However, we do not assume that the draftsmen of Section 703.B.2 intended a result that is absurd and impossible of execution. *See* Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(1); *Rudolph v. Zoning Hearing Board of College Township,* 80 Pa. Commonwealth Ct. 28, 470 A.2d 1104 (1984). Utilizing this rule of statutory construction and the rule that a more specific provision of a zoning ordinance controls over a general one, *Heck,* we find that there was a 300 foot setback requirement in a quarry district, even though, in this instance there may not have been any "structure" within the 300 feet except the walls of the quarry itself.

Although we are on most occasions loath to find a prohibition by implication, *Appeal of Mt. Laurel Racing Assn.,* 73 Pa. Commonwealth Ct. 531, 458 A.2d 1043 (1983), we hold that there is one in this case. Section 703.B.2 sets a 300 foot setback requirement for the area along Swamp Road (300 feet from the center line of any

street). While Eureka may have technically been able to extract stone along and over the Swamp Road quarry face, it was also under a concomitant duty not to reduce the nonconforming setback area, which extracting stone would accomplish, given the fact that explosives planted by Eureka in order to extract stone from the northwest quarry face would have assuredly reduced the area. Thus, we must uphold the 1984 cease-and-desist order. To hold otherwise would be to make any setback requirement relating to quarry use purely illusory.

## WHETHER EUREKA HAS A RIGHT TO CONTINUE ITS USE WITH NONCONFORMING DIMENSIONS

Eureka next argues that, by excavating stone *horizontally* towards Swamp Road and the NH&I, it is not expanding dimensional nonconformity, but merely continuing the nonconformity. In support of this argument, Eureka relies on Section 1203.A of the JMZO, which provides:

> Continuation of a use, structure or lot. Any use, structure or land, whether conforming or nonconforming, may be continued except as hereinafter provided.

This argument is specious.

Section 1203.A. of the JMZO merely states that nonconforming uses (including permitted uses with dimensional nonconformities) may be continued. In this case, the Township has never attempted to stop Eureka from extracting stone *vertically* (making the quarry pit deeper) from areas *within* the northeast and northwest faces of the quarry that are within the setback area. Thus, the Township has allowed Eureka to continue its use within the dimensional nonconformity. We agree with the Township's argument that Eureka would be *expanding* the already nonconforming dimensions of the quarry by excavating stone horizontally. This horizontal

movement of quarry walls has been held by our Supreme Court to be an expansion. *See Miller & Son Paving.*

## Whether Eureka Has a Right To Expand Nonconforming Dimensions of Its Use

Eureka also contends that it has a right to expand the nonconforming dimensions of its use. This argument relies upon Section 1208.B of the JMZO which provides:

> Expansion of a structure. A structure or other location of a use that does not conform with the setback, yard, building height, or other dimensional regulations of the district *in which it is located may be expanded provided it does not increase the extent of the nonconformity.* (Emphasis added.)

Eureka's argument in this regard is that it should be able to pick that portion of the northeast and northwest faces of the quarry closest to the adjoining properties and draw a line perpendicular to these points which gets no closer to either the NH&I or Swamp Road than the closest portion of the face of each quarry face at the present time. In other words, one should picture the closest point of the quarry wall to Swamp Road on the northwest and to the property line on the northeast and draw imaginary parallel lines, up to which Eureka could extract stone. Thus, Eureka would be able to excavate stone up to this imaginary line without allegedly increasing the nonconforming dimension of the quarry.

Eureka suggests this argument is supported by our Supreme Court's decision in *Grubb Appeal,* 395 Pa. 619, 151 A.2d 599 (1959). The landowner in *Grubb Appeal* owned an "L" shaped building containing three apartments and rooms for twenty-seven lodgers. The use was nonconforming, and the structure also was non-

conforming with respect to the front and side yard requirements of the borough zoning ordinance. The landowner sought a variance, due to a normal increase in business, to change the shape of the building from an "L" shape to a rectangle. Our Supreme Court upheld the grant of a variance stating:

> The present appellee requires additional space for the normal increase of her nonconforming business use. The proposed extension is on a portion of the property which was owned by the appellee at the time of the adoption of the ordinance. As we stated in Peirce Appeal, 384 Pa. 100, 105, 119 A.2d 506, 509: 'The clear implication of our decision in Humphreys v. Stuart Realty Corporation, 364 Pa. 616, 621, 73 A.2d 407, 409, is that a nonconforming use may be extended in scope, as the business increases in magnitude, over ground occupied by the owner for the business at the time of the enactment of the zoning ordinance. . . .' The portions of the dwelling which are to be altered are presently nonconforming as to both the side-yard and set-back requirements, and for all practical purposes are presently as close to appellant's property as the entire building will be if the alteration is permitted. . . .

*Grubb Appeal* at 622-23, 151 A.2d at 601 (citations omitted). We find *Grubb Appeal* to be inapposite to the case now before us.

First, *Grubb Appeal* was a case involving a nonconforming *use*, which under Pennsylvania law has a right to expand. By contrast, where the nonconformity is solely dimensional in nature, there is absolutely no requirement that the property affected by the zoning ordinance be allowed to expand. *Miller & Son Paving.*

Second, the appellate courts of this Commonwealth have consistently rejected "blue pencil" arguments

similar to that advanced by Eureka. In *Miller & Son Paving*, the argument was made by the quarry operator that he should be able to take the point at which the quarry walls went furthest into the setback (113 feet from an adjoining property) and draw a line around the quarry which was constantly 113 feet from a neighboring property or street to which point he could extract stone. The quarry operator argued that in so doing, he was not increasing the nonconformity of the dimensions of the quarry. Our Supreme Court rejected this argument stating that to do as Miller & Son Paving wished them to do "would go far beyond the Grubb case." *Miller & Son Paving*, 499 Pa. at 92, 451 A.2d at 1008 (quoting *Altemose Construction Co. v. Zoning Hearing Board*, 3 Pa. Commonwealth Ct. 328, 333, 281 A.2d 781, 784 (1971)).

Similarly, in *Rennerdale Volunteer Fire Department v. Zoning Hearing Board of Collier Township*, 90 Pa. Commonwealth Ct. 635, 496 A.2d 431 (1985), the fire company owned a building, a wall of which was only 4.22 feet from an adjoining lot, a preexisting dimensional nonconformity. The fire company wished to construct an addition to its building which would have extended the nonconforming wall of the structure for a substantial distance. This Court denied the variance stating that "the variance sought by the Department would . . . extend the non-conforming westerly side of the existing station." *Id.* at 642, 496 A.2d at 435.

Although *Eureka* correctly points out that in both *Miller & Son Paving* and *Rennerdale Volunteer Fire Department* the ordinances involved did not allow for the expansion of uses with nonconforming dimensions, we find these cases significantly analogous to be controlling here. The dimensional nonconformity in this case, unlike most cases, is irregular with regard to the property boundary or street. By bringing parts of the northeast

and northwest faces of the quarry closer to the NH&I and Swamp Road, the extent of the nonconformity is increased.

## WHETHER EUREKA MET ITS BURDEN OF PROOF IN ESTABLISHING ITS ENTITLEMENT TO A VARIANCE

Last, we turn to Eureka's argument that the Board and the Joint Board abused their discretion in failing to grant Eureka a variance. We disagree. Generally, an applicant for a variance must establish that there are unique physical circumstances peculiar to particular property and that unnecessary hardship is due to such conditions, that the property cannot be developed in strict conformity with the provision of the zoning ordinance, that such unnecessary hardship has not been created by the applicant, that the variance will not be detrimental to the public welfare, and that the variance will represent the minimum variance necessary to afford relief. *Township of Salisbury v. Rummel,* 44 Pa. Commonwealth Ct. 581, 406 A.2d 808 (1979).

There is absolutely no showing in this case that Eureka could not make a reasonable use of the property within the restrictions of the zoning ordinance. *See Pyzdrowski v. Pittsburgh Board of Adjustment,* 437 Pa. 481, 263 A.2d 426 (1970). The area for which Eureka seeks the variance comprises 3.9 acres of a 30.662 acre quarry (approximately 13% of the quarry area). If the variance Eureka seeks is granted, it could continue to extract stone from the quarry for another fifty-one years. But, even with the setbacks imposed by the JMZO in place, Eureka can still continue its quarry use for another 37.5 years. Given the 1984-85 price for the type of stone products sold by the Rush Valley II Quarry, Eureka would realize approximately $300,000 in gross sales a year and ten to fourteen million dollars in gross sales over the quarry's remaining useful life. The mere fact

that quarrying within the present northeast and northwest setback areas would be more profitable than if Eureka were not allowed to extract stone from these areas of the quarry is insufficient to show unnecessary hardship. *See Pilot Oil Corp. Appeal,* 86 Pa. Commonwealth Ct. 23, 483 A.2d 1049 (1984). Therefore, the denial of Eureka's request for a variance was proper.[8]

Accordingly, the order of the Court of Common Pleas of Bucks County is affirmed.

### ORDER

The order of the Court of Common Pleas of Bucks County in the above captioned matter is hereby affirmed.

---

[8] This is the only argument advanced by Eureka which expressly relates to either the 1980 cease-and-desist order or variance request. Clearly, for the reasons stated in the argument immediately preceding this one, Eureka is not entitled to a variance on the ground that quarrying to the farthest point of nonconforming on the northeast quarry face does not increase the extent of the quarry's dimensional nonconformity. *See Miller & Son Paving; Rennerdale Volunteer Fire Department.*

The Board also found in 1981 that Eureka could continue to operate the Rush Valley II quarry for between eight and twenty-one years extracting between 1,030,000 and 2,555,000 tons of stone during this period. Again, this is insufficient to show that Eureka could not make a reasonable use of the quarry within the restrictions of the zoning ordinance. *See Pyzdrowski v. Pittsburgh Board of Adjustment,* 437 Pa. 481, 263 A.2d 426 (1970). Additionally, the Board's finding that Eureka had not proven that the grant of the variance would not be detrimental to the public welfare was supported by substantial evidence. *See Atlantic Richfield Co. v. City of Franklin Zoning Hearing Board,* 77 Pa. Commonwealth Ct. 102, 465 A.2d 98 (1983).